**Docket No.** _____

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

_____

## In Re: TSAY JBR, LLC,

Petitioner,

v.

## UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,

Respondent,

## THERESA BROOKE,

Real Party in Interest.

_____

From The United States District Court For the Central District of California, Case No. 2:23-cv-07378-DMG-AJR

## PETITION FOR A WRIT OF MANDAMUS

_____

James S. Link (State Bar # 94280)
james.s.link@att.net
Counselor & Advocate At Law
215 N. Marengo Avenue, Third Floor
Pasadena, CA  91101
(626) 379-5270
Attorney for Petitioner Tsay JBR, LLC

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, counsel for the Petitioner certifies that Petitioner Tsay JBR, LLC is not subject to the corporate disclosure requirements.

Date:  August 26 , 2024

James S. Link
Counselor & Advocate at Law

_____
James S. Link
Attorney for Petitioner Tsay JBR,
LLC

# TABLE OF CONTENTS

Corporate Disclosure Statement ............................................................... 2

Table of Contents....................................................................................... 3

Table Of Authorities.................................................................................. 5

Preface....................................................................................................... 7

Summary.................................................................................................... 8

Statement of Jurisdiction......................................................................... 10

Issue Presented ....................................................................................... 10

Relief Sought........................................................................................... 10

Statement Of Facts ................................................................................. 11

Reasons Why The Writ Should Issue ..................................................... 12

    1.    This Court should grant mandamus to protect Petitioner's
        right to trial by jury. ............................................................. 13

    2.    The Seventh Amendment guarantees Petitioner's right to
        trial by jury for this case. ...................................................... 14

    a.    The substantive dimension of the Unruh damage claims is
        the common law. ................................................................... 15

    b.    The suggestion by the District Court that damages are not a
        matter for factual determination is plain wrong.................. 16

    c.    That the action had been combined with injunctive relief
        does not preclude the constitutional right to trial by jury... 19

    d.    Finally, the District Court sitting in equity cannot decide the
        statutory minimum damage—a civil penalty—when jury
        trial has been demanded. ....................................................... 20

e.  In sum, the Seventh Amendment commands Petitioner receive a jury trial in this case. ............................................... 21

3.  The California Legislature grants the right to trial by jury on Unruh damage claims. ...................................................... 21

4.  Unruh long pre-existed the ADA; the ADA does not preclude Petitioner's right to trial by jury. .......................................... 23

Conclusion ............................................................................................... 25

Statement of Related Cases ................................................................... 26

Index Of Exhibits ................................................................................... 27

Certificate Of Service ............................................................................ 28

## TABLE OF AUTHORITIES

**Cases**

*Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 511 (1959) ................ 13

*Brooke v. Ashna Inc.*, 2024 U.S. Dist. LEXIS 122343, at *1-2 (C.D. Cal. July 11, 2024) .............................................................................. 11

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 580 (1990) ...................................................................................... 7

*Cnty. of Orange v. United States Dist. Court,* 784 F.3d 520, 526 (9th Cir. 2015) ................................................................................. 10, 14

*Curtis v. Loether*, 415 U.S. 189, 193-94 (1974) ...................................... 22

*Doran v. 7-Eleven, Inc.,* 509 F. App'x 647, 648 (9th Cir. 2013), ............. 17

*Harris v. Capital Growth Inv'rs XIV*, 52 Cal.3d 1142, 1172 (1991)....... 20

*Kohler v. Presidio Int'l, Inc.*, 2016 U.S. Dist. LEXIS 93519, at *7 (C.D. Cal. 2016) ................................................................................... 17

*Leuthauser v. United States*, 71 F.4th 1189, 1196 (9th Cir. 2023) ........ 22

*Lutz v. Glendale Union High Sch., Dist. No. 205*, 403 F.3d 1061, 1069-70 (9th Cir. 2005) ......................................................................... 23

*Mondor v. United States Dist. Court*, 910 F.2d 585, 586 (9th Cir. 1990) ................................................................................. 10, 13, 14

*Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 678, fn. 13 (2009)................. 20

*Myers v. United States Dist. Court*, 620 F.2d 741, 743-44 (9th Cir. 1980) ................................................................................................... 13

*People v. Graves*, 46 Cal. App. 5th 231, 235 (2020). ............................. 22

*SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024) ................................. 12, 21

*Simler v. Conner*, 372 U.S. 221, 222 (1963) .......................................... 15

S*mith v. BP Lubricants USA Inc.*, 64 Cal.App.5th 138, 149 (2021) ...... 16

*Tamosaitis v. URS Inc.*, 781 F.3d 468, 487 (9th Cir. 2015).............. 19, 20

*Thurston v. Omni Hotels Mgmt. Corp.*, 69 Cal.App.5th 299, 306-307 (2021) ...................................................................................... 16

*Tull v. United States*, 481 U.S. 412, 425, 107 S. Ct. 1831, 1839 (1987) 19, 20

*Tushner v. US Dist. Court*, 829 F.2d 853, 855 (9th Cir. 1987) ......... 10, 13

*W. Shield Investigations & Sec. Consultants v. Superior Court* (2000) 82 Cal.App.4th. 935 ................................................................................ 15

*Warfield v. Peninsula Golf & Country Club,* 10 Cal.4th 594, 607-608 (1995) ................................................................................................ 23

*Whitaker v. BOP FIGAT7TH LLC,* 2019 U.S.Dist.LEXIS 37086, at *9 (C.D. Cal. 2019) ...................................................................................... 17

*Wilmington Trust v. United States Dist. Court*, 934 F.2d 1026, 1028 (9th Cir. 1991) .......................................................................................... 10, 13

## Statutes

Civil  Code § 52 ............................................................................ 9, 21, 23

Civil Code § 51 ...................................................................................... 24

Civil Code § 52 ................................................................................ 16, 22

Civil Code § 54.1 .................................................................................... 25

Civil Code § 55.56 ........................................................................ 16, 18, 21

Section 1 of 1992 Stats. Chap. 913 ........................................................ 25

## Other Authorities

CACI 3060, Unruh Civil Rights Act—Essential Factual Elements (Civ. Code, §§51, 52) ...................................................................................... 19

CACI 3067, Unruh Civil Rights Act—Damages (Civ. Code, §§ 51, 52(a)) ............................................................................................................ 19

CACI 3070, Disability Discrimination—Access Barriers to Public Facility—Construction-Related Accessibility Standards Act—Essential Factual Elements (Civ. Code, §§ 54.3, 55.56) ................ 19

## Constitutional Provisions

Seventh Amendment ...................................................................... passim

PREFACE

"What Blackstone described as 'the glory of the English law' and 'the most transcendent privilege which any subject can enjoy,' [citation] was crucial in the eyes of those who founded this country. The encroachment on civil jury trial by colonial administrators was a 'deeply divisive issue in the years just preceding the outbreak of hostilities between the colonies and England,' and all 13 States reinstituted the right after hostilities ensued. [Citation.]"

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 580 (1990), Justice William Brennan, concurring. Writing further, Justice Brennan said:

"This Court has long recognized the caliber of this right. In *Parsons v. Bedford*, 3 Pet. 433, 446 (1830), Justice Story stressed: 'The trial by jury is justly dear to the American people. It has always been an object of deep interest and solicitude, and every encroachment upon it has been watched with great jealousy.' Similarly, in *Jacob v. New York City*, 315 U.S. 752, 752-753 (1942), we said that '[t]he right of jury trial in civil cases at common law is a basic and fundamental feature of our system of federal jurisprudence . . . [a] right so fundamental and sacred to the citizen [that it] should be jealously guarded by the courts.'"

*Chauffeurs* at 581.

With the stroke of a pen, this fundamental and sacred right was denied. A writ of mandate should issue to restore this right.

7

## SUMMARY

Real Party In Interest Theresa Brooke (Real Party) sues Petitioner Tsay JBR, LLC (Petitioner) for violation of the Americans with Disabilities Act (ADA) and the Unruh Civil Rights Act (Unruh). The ADA claims were resolved by a motion for summary judgment, with the Unruh damage claim remaining for trial. Petitioner timely demanded trial by jury in is Answer. On the eve of the Final Pretrial Conference, Respondent United States District Court for the Central District of California (District) denied Petitioner's Seventh Amendment constitutional right to trial by jury. The District Court's decision is clearly erroneous.

The District Court's rationale for the denial of Petitioner's constitutional right to trial by jury is unsupportable. The Seventh Amendment requires trial by jury, where demanded, on Real Party's legal claim for Unruh damages against Petitioner.

The District Court reasoned Unruh does not provide a statutory right to trial by jury this despite quoting Civil Code § 52(a) that provides "(']Whoever is in violation of the Unruh Act ] is liable for ... any amount that may be determined by a jury, **or a court sitting without a jury**') (emphasis in original.)" Exhibit 1, p. 30.[1] Merely bolding the language "or a court sitting without a jury" does not eliminate the right of the parties to a jury trial; Unruh gives the parties a choice. If there was no right to a jury trial for Unruh damage, the Judicial Council of California would not have created Civil Jury Instructions (CACI) Nos.

---

[1] The Exhibits attached to this Petition are consecutively numbered at the top of the page beginning with number 28, with numbers in the citations.

3060 et seq.

The District Court also reasoned Unruh is modeled after the ADA, which does not allow for jury trial. Exhibit 1, p. 30. That is simply not true and the reasoning fails to justify the extraordinary act of nullification of the right. Unruh long preceded the passage of the ADA and the incorporation of the ADA in Unruh cannot preclude the right to a jury trial. Moreover, the damages element of the claim is unique to Unruh and not present within the ADA that provides only for injunctive relief.

The District Court decided the statutory damages are intertwined with the injunctive relief. Exhibit 1, p. 30. That is simply not true. The proof for causally related harm necessary for damages is very different than the proof for injunctive relief. And, the statutory minimum damage is a penalty; the Supreme Court has held penalties cannot be awarded by a court sitting in equity. The Supreme Court has also held jury trial must be preserved in mixed legal and equitable cases.

The District Court rationalized the statutory minimum penalty damage is not discretionary and thus incidental to the claim the ADA was violated. Exhibit 1, p. 31. Again, that is simply not true. In order to recover Unruh damage, the plaintiff must prove more than noncompliance with the ADA. The plaintiff must prove she was a bona fide patron (not a requirement of the ADA), and prove discrimination and causally related harm, even if the absolute requirement for proof of actual damages is rejected.

Mandamus is necessary and proper to compel the District Court to honor Petitioner's Seventh Amendment right to a jury trial for Real

9

Party's legal damage claim. "**The right to a jury trial, however, has occupied an exceptional place in the history of the law of federal mandamus** permitting a writ to issue although the petitioner is unable to show a 'clear and indisputable' right. [Citation.] [Emphasis added.]" *Wilmington Trust v. United States Dist. Court*, 934 F.2d 1026, 1028 (9th Cir. 1991).

Petitioner here presents a clear and indisputable right to a jury trial. That right is both statutory and constitutional.

### STATEMENT OF JURISDICTION

The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 USC § 1651. In a case where, as here, "the mandamus petition alleges the erroneous deprivation of a jury trial, the factors set forth in *Bauman* [v. *U.S. District Court*, 557 F.2d 650 (9th Cir. 1977)] governing the issuance of the writ are inapplicable." *Cnty. of Orange v. United States Dist. Court,* 784 F.3d 520, 526 (9th Cir. 2015); see also *Tushner v. US Dist. Court*, 829 F.2d 853, 855 (9th Cir. 1987); *Mondor v. United States Dist. Court*, 910 F.2d 585, 586 (9th Cir. 1990) ("While mandamus relief is extraordinary and is available only in very limited circumstances, the wrongful denial of a jury trial is an appropriate basis for such relief.").

### ISSUE PRESENTED

Does the Seventh Amendment guarantee the parties the right to trial by jury in federal court for Unruh Civil Rights Act damage claims, which by Unruh's terms guarantees a right to a jury trial?

### RELIEF SOUGHT

Petitioner requests mandamus compelling the District Court to

vacate its August 19, 2024 order and reinstate Petitioner's Seventh Amendment right to proceed with a jury trial in the action.

Petitioner also requests this Court stay the District Court action pending the ruling on this Petition.

### STATEMENT OF FACTS

Real Party filed her complaint in the action on September 6, 2023. Exhibit 2. She allegedly visited Petitioner's Ramada Inn hotel and discovered that it did not allegedly have compliant passenger loading zone and valet parking striping. Exhibit 2, pp. 34-36, ¶¶ 7-14.[2] She sought injunctive relief (Exhibit 2, pp. 37-38, ¶¶ 23 and 30) and damages, claiming she suffered discrimination as a result of the lack of striping (Exhibit 2, p. 39, ¶¶ 33-35).

Petitioner filed its answer and demand for trial by jury on October 2, 2023. Exhibit 3, pp. 42, 48.

On March 20, 2024, the District Court issued an order on Real Party's motion for summary judgment. Exhibit 4, p. 50. The court denied two claims for injunction sought by Real Party and granted one injunctive relief claim. Exhibit 4, pp. 61, 62. The District Court denied Real Party's requested award of damages ruling, "Because the pre-

_____

[2] "As of February 2020, Brooke had filed over 800 actions against hotels across California, Arizona, and Colorado for alleged ADA violations. (Id. ¶ 47; Brooke Decl., Doc. 35-7 ¶ 6.) And since 2021, Brooke has filed over 500 ADA actions against hotels for allegedly failing to provide ADA-compliant access aisles alongside their passenger-loading zones. (Case Chart, Doc. 35-6.) Brooke 'generally settles each case for, on average, $5,000,' meaning that she has recovered about $6,500,000 across the actions described above. (Brooke Supp. Interrogatories Resp., Doc. 35-11 at 6.)" *Brooke v. Ashna Inc.*, 2024 U.S. Dist. LEXIS 122343, at *1-2 (C.D. Cal. July 11, 2024).

existing ramp was directly adjacent to the PLZ [passenger loading zone] and Defendant has shown that there is a factual dispute as to whether the temporary open valet stand actually deterred Plaintiff or caused her 'difficulty, discomfort, or embarrassment,' the Court DENIES Plaintiff's MSJ with regard to her Unruh Act claim." Exhibit 4, p. 63.

On April 15, 2024, the District Court issued an Order To Show Cause Why The Jury Trial In This Case Should Not Be Converted To A Court Trial. Exhibit 5, pp. 68-69.

Real Party responded she would accept a court trial. Exhibit 6, p. 71.

On April 17, 2024, Petitioner filed its Response To Order To Show Cause Why The Jury Trial In This Case Should Not Be Converted To A Court Trial, opposing the District Court's reasoning that Petitioner should be denied its right to trial by jury. Exhibit 7, pp. 73-90. To be clear, between October 2, 2023 and April 15, 2024, there was no objection to proceeding to trial by jury. Nor had Petitioner ever suggested nor taken an act indicating any intention to waive the right.

On August 19, 2024, the District Court issued the order in question--Order Converting Jury Trial To Court Trial—one day before the Final Pretrial Conference. Exhibit 1, p. 31. The rationale for the Order is noted in the Introduction above.

### REASONS WHY THE WRIT SHOULD ISSUE

"The right to trial by jury is 'of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right' has always been and "should be scrutinized with the utmost care.' [Citation.]" *SEC v. Jarkesy*, 144 S. Ct. 2117, 2128 (2024). Scrutiny need not go very deep in this case. There is

utterly no basis for the District Court's denial of a jury trial to Petitioner.

### 1. This Court should grant mandamus to protect Petitioner's right to trial by jury.

Under long-standing Supreme Court precedent, "the right to grant mandamus to require jury trial where it has been improperly denied is settled." *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 511 (1959). The Ninth Circuit has long held a petition for writ of mandamus is an available avenue for relief from an order denying trial by jury. See *Wilmington Trust v. United States Dist. Court*, 934 F.2d 1026, 1028 (9th Cir. 1991) (right to jury trial occupies "exceptional place" in history of federal mandamus, and showing of "clear and indisputable" right not required). "If the plaintiffs are entitled to a jury trial, their right to the writ is clear. [Citation.]" *Tushner*, supra, 829 F.2d at 855.

A writ of mandamus properly issues where the district court denies trial by jury due to an erroneous conclusion that petitioner has no right to trial by jury or that petitioner failed to timely demand a jury. See *Wilmington Trust*, 934 F.2d at 1028 (granting petition where district court erroneously concluded that petitioner had no right to trial by jury); *Tushner*, 829 F.2d at 855-56 (granting petition where district court erroneously concluded that jury demand in original federal action was untimely); *Mondor, supra,* 910 F.2d at 587 (granting petition where district court erroneously concluded that petitioner failed to properly demand jury after removal to federal court); *Myers v. United States Dist. Court*, 620 F.2d 741, 743-44 (9th Cir. 1980) (granting petition where district court erroneously concluded that petitioner

failed to properly demand jury prior to removal to federal court).

"While mandamus relief is extraordinary and is available only in very limited circumstances, **the wrongful denial of a jury trial is an appropriate basis for such relief**. [Citations.] **Thus, the only question presented here is whether the district court erred in denying petitioner's request for a jury trial**. [Emphasis added.]" *Mondor, supra*, 910 F.2d at 585-86. See also, *Cnty. of Orange*, *supra*, 784 F.3d at 526.

The District Court's order vacating Petitioner's demand for a jury trial is erroneous. Real Party's Unruh damages claim present common law issues for which the Seventh Amendment commands a jury trial when demanded. Moreover, State law explicitly establishes the Petitioner's right to a jury trial. The ruling denying jury trial is inconsistent with the order denying summary judgment on the Unruh damage claim. As the District Court's order on summary judgment recognizes, there are factual disputes to be resolved, not an automatic award for damages without proof of harm proximately caused by Petitioner.

**2.      The Seventh Amendment guarantees Petitioner's right to trial by jury for this case.**

The Seventh Amendment provides, "**In Suits at common law**, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." (Emphasis added.)

"[T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions. **The federal policy favoring jury trials is of historic and continuing**

**strength**. [Citations.]  Only through a holding that the jury-trial right is to be determined according to federal law can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved. **In diversity cases, of course, the substantive dimension of the claim asserted finds its source in state law**, [citations], but the characterization of that state-created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law. [Emphasis added.]"  *Simler v. Conner*, 372 U.S. 221, 222 (1963).

a.     **The substantive dimension of the Unruh damage claims is the common law.**

The Unruh Civil Rights Act of which Section 52 is a part is "a refinement and codification of existing common law liability for violation of civil rights".  *W. Shield Investigations & Sec. Consultants v. Superior Court,* 82 Cal.App.4th. 935, 953 (2000).

Civil Code § 52(a) requires proof of causally related harm "suffered by any person denied the rights provided in Section 51, 51.5, or 51.6." Civil Code § 55.56 further requires proof of causation for Unruh damage claims.

"(a) Statutory damages under either subdivision (a) of Section 52 or subdivision (a) of Section 54.3 may be recovered in a construction-related accessibility claim against a place of public accommodation **only if a violation or violations of one or more construction-related accessibility standards denied the plaintiff full and equal access to the place of public**

**accommodation on a particular occasion**.  [Emphasis added.]"

As part of the element of causation, the California Courts in *White v. Square, Inc.,* 7 Cal. 5th 1019, 1032 (2019), *Thurston v. Omni Hotels Mgmt. Corp.*, 69 Cal.App.5th 299, 306-307 (2021) and *Reycraft v. Lee*, 177 Cal. App. 4th 1211, 1224-25 (2009) establish an Unruh plaintiff must prove she intended to be a bona fide guest of the hotel to recover Unruh damages.

The court in *Thurston*, explained, "the [Unruh Act] is confined to discriminations against recipients of the 'business establishment's ... goods, services or facilities.' [Unruh Act] claims are thus, 'appropriate where the plaintiff was in a relationship with the offending organization similar to that of the customer in the customer-proprietor relationship.'" Id. at 306 (citing S*mith v. BP Lubricants USA Inc.*, 64 Cal.App.5th 138, 149 (2021)). Thus, "[b]eyond the pleading stage, if a plaintiff wants to prevail on an Unruh Civil Rights Act claim, he or she must present sufficient evidence to overcome the online defendant's argument that he or she 'did not actually possess *a bona fide intent* to sign up for or use its services.'" Id. at 307 (quoting *White*, 7 Cal. 5th at 1032).

Proof of bona fide intent to patronize the business separates Unruh from the ADA.  In this Court, there is no such requirement for the federal claim.

**b.    The suggestion by the District Court that damages are not a matter for factual determination is plain wrong.**

The District Court suggests the $4000 statutory minimum penalty

16

involves no factual determination, only the existence of non-compliance with access regulation. (Exhibit 1, p.3.)[3] Not only is the court's ruling inconsistent with the denial of summary judgment, it misstates the law.

In *Doran v. 7-Eleven, Inc.,* 509 F. App'x 647, 648 (9th Cir. 2013), this Court affirmed a judgment for defendant, ruling plaintiff had not met his burden of proof on, among other issues, damages:

> "Doran offered no evidence that he was deterred from accessing the 7-Eleven, Cal. Civ. Code § 55.56(b), nor did he prove that he personally encountered the violation and 'experienced difficulty, discomfort, or embarrassment because of the violation.' Cal. Civ. Code § 55.56(c). **Indeed, he stipulated that he suffered no physical or emotional harm from encountering the alleged violations. A claimant who offers no such evidence is 'not entitled as a matter of law' to recover statutory damages under the CRAS** [Construction Related Accessibility Standards Compliance Act]. [Emphasis added.] ... ."

See also *Kohler v. Presidio Int'l, Inc.*, 2016 U.S. Dist. LEXIS 93519, at *7 (C.D. Cal. 2016); and *Whitaker v. BOP FIGAT7TH LLC,* 2019 U.S.Dist.LEXIS 37086, at *9 (C.D. Cal. 2019) ["Statutory damages

---

[3] The District Court ruled, "the Unruh Act explicitly separates actual damages from statutory damages, further suggesting that the $4,000 in statutory damages functions as a penalty that is merely incidental to the injunctive relief and, unlike actual damages, **was not intended to be a basis for specific, discretionary monetary relief**. [Emphasis added.]" Exhibit 1, p. 3. While error in deciding that statutory minimum damages separately exists from actual damages can wait for another day, the District Court acknowledges the statutory minimum damage is a penalty. A court of equity cannot award penalty damages. See Point II, Subheading d below.

are not automatic upon a violation of the Unruh Act."]

Unruh damage is not automatic for an alleged noncompliance with access regulations. CACI 3060, Unruh Civil Rights Act—Essential Factual Elements (Civ. Code, §§51, 52), speaks of the cause of action for the violation of Unruh and in part provides:

"… To establish this claim, [name of plaintiff] must prove all of the following:

***

"3.That [name of plaintiff] was harmed; and

"4.That [name of defendant]'s conduct was a substantial factor in causing [name of plaintiff]'s harm."

CACI 3067, Unruh Civil Rights Act—Damages (Civ. Code, §§ 51, 52(a)), also establishes damages are not automatic:

"If you decide that [name of plaintiff] has proved [his/her/nonbinary pronoun] claim against [name of defendant], you also must decide how much money will reasonably compensate [him/her/nonbinary pronoun] for the harm. This compensation is called 'damages.'"

Even the Judicial Council's ill-advised (an issue left for another time) CACI 3070, Disability Discrimination—Access Barriers to Public Facility—Construction-Related Accessibility Standards Act—Essential Factual Elements (Civ. Code, §§ 54.3, 55.56) requires proof of causally related harm:

"[A violation that [name of plaintiff] personally encountered may be sufficient to cause a denial of full and equal access if [he/she/nonbinary pronoun] experienced difficulty, discomfort, or embarrassment because of the violation.]"

The Unruh required proof of causation and harm, if not also actual damages, are essential common law dimensions that trigger the Seventh Amendment right to trial by jury.

### c. That the action had been combined with injunctive relief does not preclude the constitutional right to trial by jury

Further, the constitution commands the right to trial by jury even though the action is mixed law and equity—which is no longer the circumstance with the ruling on the motion for summary judgment. In any event, the rule stated by the Supreme Court is:

> "In such a situation, if a 'legal claim is joined with an equitable claim, the right to jury trial on the legal claim, including all issues common to both claims, remains intact. **The right cannot be abridged by characterizing the legal claim as "incidental" to the equitable relief sought.**' [Citation.] [Emphasis added.] Thus, petitioner has a constitutional right to a jury trial to determine his liability on the legal claims." *Tull v. United States*, 481 U.S. 412, 425 (1987).

This Court's decision in *Tamosaitis v. URS Inc.*, 781 F.3d 468, 487 (9th Cir. 2015) applied *Tull*:

> "[Plaintiff] also requests reputational damages and **mental and emotional damages. Such damages are not merely incidental to the equitable relief of reinstatement**. [Citation.] [Emphasis added.] And where a statute authorizes both equitable and legal relief, the plaintiff's decision to 'join[ ]' a legal claim with an equitable claim does not 'abridge[ ]' 'the right to jury trial on the legal claim.' [Citation.] It is irrelevant

whether an action is properly characterized 'as one for damages and injunctive relief, or as one for damages alone, for purposes of analyzing the jury trial issue.' [Citation.]"

*Tamosaitis* is very much on point in this case. Real Party must at least prove harm in the form of difficulty, discomfort or embarrassment (Civil Code § 55.56), which much is akin to mental or emotional damages that are not incidental to injunctive relief.

The right to trial by jury does not disappear when an injunction is claimed. The damage claim is not subsumed in the injunction.

### d. Finally, the District Court sitting in equity cannot decide the statutory minimum damage—a civil penalty—when jury trial has been demanded.

The District Court ruled, correctly, the $4000 damage in section 52(a) is a statutory minimum penalty. See fn. 3. As a penalty, proof of at least intentional wrongdoing, along with the proof of the harm suffered, has always been required. See *Harris v. Capital Growth Inv'rs XIV*, 52 Cal.3d 1142, 1172 (1991) ["the damages provision [of section 52] allowing for an exemplary award of up to treble the actual damages suffered **with a stated minimum amount reveals a desire to punish intentional and morally offensive conduc**t. [Emphasis added.]"; *Munson v. Del Taco, Inc.*, 46 Cal.4th 661, 678, fn. 13 (2009) ["In any event, **intent to comply with or violate the law** might be relevant on a number of other issues, including the award of treble damages (§ 52, subd. (a)) ... ." [Emphasis added.]]

The Court in *Tull* stated, "while a court in equity may award monetary restitution as an adjunct to injunctive relief, it may not

enforce civil penalties. [Citation.]" *Tull*, 481 U.S. at 424, emphasis added.  See also *SEC v. Jarkesy*, 144 S. Ct. at 2130 ['the civil penalties in this case are designed to punish and deter, not to compensate. **They are therefore 'a type of remedy at common law that could only be enforced in courts of law.**' [Citation.]  [Emphasis added." ]

The District Court's correct conclusion that the $4000 statutory damage is a penalty precludes that court's denial of the right to trial by jury.

**e.      In sum, the Seventh Amendment commands Petitioner receive a jury trial in this case.**

The Seventh Amendment guarantees Petitioner's right to trial by jury.  Unruh presents common law issues that are not swallowed by the injunctive relief claim.  A court of equity cannot decide the penalty. That the damages are small or that supplemental jurisdiction over the Unruh cause of action should have been declined does not justify the denial of Petitioner's constitutional right.

**3.      The California Legislature grants the right to trial by jury on Unruh damage claims.**

The District Court ruled Unruh does not contain a right to trial by jury.  Exhibit 1, p. 30.  That is not so.  Civil Code § 52(a) provides "(a) Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense **for the actual damages, and any amount that may be *determined by a jury, or a court sitting without a jury*, up to a maximum of three times the amount of actual damage but in no**

**case less than four thousand dollars ($4,000)**, and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6." (Emphasis added.)

The District Court read section 52(a) as not granting a right to a jury trial. "Determined by a jury" cannot be ignored simply because that phrase is followed by "or a court sitting without a jury". Authority should not need to be cited that the word "or" does not delete the words before it. "The use of a disjunctive such as the word 'or' denotes alternative or separate categories." *People v. Graves*, 46 Cal. App. 5th 231, 235 (2020); *Leuthauser v. United States*, 71 F.4th 1189, 1196 (9th Cir. 2023) ["'As a general rule, the use of a disjunctive in a statute indicates alternatives and requires that they be treated separately.' [Citation.]"]

The California Legislature grants the right to trial by jury on Unruh damage claims. There exists a clear state law right to trial by jury.

"Whatever doubt may have existed should now be dispelled. The Seventh Amendment does apply to actions enforcing statutory rights, and requires a jury trial upon demand, if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary courts of law." *Curtis v. Loether*, 415 U.S. 189, 193-94 (1974).

The District Court's reading of section 52(a) is clearly erroneous. If there was no choice for the parties to demand jury trial, the Judicial Council would not have drafted the jury instructions quoted above.

**4.    Unruh long pre-existed the ADA; the ADA does not preclude Petitioner's right to trial by jury.**

The District Court cited *Lutz v. Glendale Union High Sch., Dist. No. 205*, 403 F.3d 1061, 1069-70 (9th Cir. 2005) to support the denial of the right to trial by jury.  In *Lutz*, the state statute had been modeled after a federal statute that did not allow a trial by jury.  *Lutz*  has no application in this case.

Unruh was not modeled after the ADA.  To the contrary, Unruh long preceded the ADA.  "After the *United States Supreme Court*, in the Civil Rights Cases (1883) 109 U.S. 3 [27 L. Ed. 835, 3 S.Ct. 18], invalidated the first federal public accommodation statute, **California joined a number of other states in enacting its own initial public accommodation statute, the statutory predecessor of the current version of section 51**. (Stats. 1897, ch. 108, § 2, p. 137.) [Emphasis added.]" *Warfield v. Peninsula Golf & Country Club,* 10 Cal.4th 594, 607-608 (1995).

Unruh traces back to 1897.  Civil Code § 51 came into being in 1905.  In 1987, still many years prior to the enactment of the ADA, the Unruh Civil Rights Act protections were specifically extended to the disabled.  See the Stats. 1987, Chap. 159 (enrolled bill) where the Legislature stated:

> "**Existing law provides similar, but less inclusive civil rights, provisions with respect to blind and other physically, disabled persons.** [¶] This bill would include blindness and other physical disabilities within the bases of discrimination prohibited by these general civil rights [Unruh] provisions."  (Emphasis added.)

23

Unruh provided protections against discrimination years before the enactment of the ADA.  Unruh was not modeled after the ADA. And the incorporation of the ADA into Unruh did not convert Unruh into the ADA.  In the 1992 amendment of Civil Code § 51, the Legislature stated:

> "It is the intent of the Legislature in enacting this act to strengthen California law in areas where it is weaker than the Americans with Disabilities Act of 1990 (Public Law 101-336) and **to retain California law when it provides more protection for individuals with disabilities than the Americans with Disabilities Act of 1990**.  [Emphasis added.]" Section 1 of 1992 Stats. Chap. 913.

The 1992 amendment strengthened Unruh; it did not reshape Unruh in the form of the ADA. As stated by the Supreme Court,

> "As part of the 1992 reformation of state disability law, the Legislature amended the Unruh Civil Rights Act to incorporate by reference the ADA, making violations of the ADA per se violations of the Unruh Civil Rights Act. [Citations.]  **This amendment was intended to extend to disabled individuals aggrieved by an ADA violation the full panoply of Unruh Civil Rights Act remedies**. [Citation.] [Emphasis added.]" *Jankey v. Lee*, 55 Cal. 4th 1038, 1044 (2012).

Moreover, Unruh did not incorporate the federal procedure of the ADA.  Section 51 provides:  "(f) A violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."  See also the parallel provision in Civil Code § 54.1(d).  The ADA is incorporated in

Unruh and the DPA as a basis for a violation of those Acts only, not the procedure. The Supreme Court held in *Jankey, supra*, "We conclude the plain language of section 55 makes an award of fees to any prevailing party mandatory, and the ADA does not preempt this part of the state's attorney fee scheme for disability access suits." (55 Cal.4th at 1042.) The procedural aspects of the ADA are not incorporated into Unruh.

Nothing in or about the ADA justifies a denial of Petitioner's right to a jury trial. Section 52(a) of Unruh gives the parties the right to a jury trial or bench trial.

## CONCLUSION

Absent issuance of a writ, Petitioner will be deprived of its constitutional right to a jury trial. The District Court has already ruled there are factual disputes on the damage claim that Petitioner submits a jury should decide. Any judgment by a court trial in favor of Real Party on the damage claim will be reversible error. This Court can and should grant the writ, thereby avoiding the necessity of subsequent appeals that could have been avoided and, of paramount importance, affirm the vitality and the supremacy of our Constitutional right to jury trial.

Date: August 26, 2024          James S. Link
                               Counselor & Advocate at Law

                               _James S. Link_

                               _____
                               James S. Link
                               Attorney for Petitioner Tsay JBR,
                               LLC

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Petitioner states that it is not aware of any related cases pending in this Court.

Date:  August 26, 2024

James S. Link
Counselor & Advocate at Law

_____

James S. Link
Attorney for Petitioner Tsay JBR,
LLC

### INDEX OF EXHIBITS

| No. | Description | Page No. |
|---|---|---|
| 1 | Order Converting Jury Trial To Court Trial | 28 |
| 2 | Verified Complaint | 32 |
| 3 | Answer To Complaint; Demand For Trial By Jury (without exhibit) | 41 |
| 4 | Order Re Plaintiff's Motion For Summary Judgment And Defendant's Motion For Bond | 49 |
| 5 | Order To Show Cause Why The Jury Trial In This Case Should Not Be Converted To A Court TriaL | 67 |
| 6 | Plaintiff's Response To Doc. 38 Order To Show Cause | 70 |
| 7 | Response To Order To Show Cause Why The Jury Trial In This Case Should Not Be Converted To A Court Trial | 72 |

000028

# EXHIBIT 1

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 29 of 91
Case 2:23-cv-07378-DMG-AJR    Document 49    Filed 08/19/24    Page 1 of 3    Page ID
#:658

000029

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-7378-DMG (AJRx) | Date | August 19, 2024 |
|---|---|---|---|

| Title | **_Theresa Brooke v. Tsay Jbr LLC_** | Page | 1 of 3 |
|---|---|---|---|

Present: The Honorable    DOLLY M. GEE, CHIEF UNITED STATES DISTRICT JUDGE

| KELLY DAVIS | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

Proceedings:  **IN CHAMBERS—ORDER CONVERTING JURY TRIAL TO COURT TRIAL**

## I.
## INTRODUCTION AND BACKGROUND

On March 20, 2024, the Court granted in part and denied in part Plaintiff Theresa Brooke's Motion for Summary Judgment ("MSJ"). [Doc. # 35.] After the resolution of the MSJ, the only remaining triable issue in this action is whether Plaintiff is entitled to statutory damages under California's Unruh Act. In their March 26, 2024 joint status report, the parties informed the Court that they were unable to resolve the remaining issue and that Defendant had "decided to proceed with the trial of the action to secure a final judgment in order to appeal the Court's ruling on Article III standing." [Doc. # 36 at 2].[1] Further, although the Court has already reminded the parties of their obligation to complete a mandatory ADR proceeding, Plaintiff informed the Court on July 30, 2024 that they did not do so by the July 5, 2024 deadline. *See* Pl.'s Status Report at 1 [Doc. # 47]; Scheduling and Case Management Order at 4 [Doc. # 23 ("CMO")] (**"No case will proceed to trial unless all parties . . . have appeared personally at a settlement conference."**).

This case is currently scheduled for a jury trial, set to begin on September 17, 2024. *See* CMO at 18. Federal Rule of Civil Procedure 39(a) allows the Court, however, to convert the trial in this action from a jury trial to a court trial. *See* Fed. R. Civ. P. 39(a) ("When a jury trial has been demanded under Rule 38 . . . [t]he trial on all issues so demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial."); *see also Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1211 (C.D. Cal. 2008) ("A district court may strike a jury demand if the court finds that the issues presented are not entitled to a jury trial."). Accordingly, on April 15, 2024, the Court ordered the parties to show cause as to why the jury trial in this case should not be converted to a court trial. [Doc. # 38 ("OSC").]

---

[1] Page citations herein refer to the page number inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-7378-DMG (AJRx) | | Date | August 19, 2024 |
|---|---|---|---|---|

| Title | *Theresa Brooke v. Tsay Jbr LLC* | | Page | 2 of 3 |
|---|---|---|---|---|

In response to the Court's OSC, Plaintiff indicated that she did not object to proceeding via a court trial rather than a jury trial. [Doc. # 39.] Defendant, however, objected to a court trial based on its purported Seventh Amendment right to a jury trial on the remaining issue. [Doc. # 40.] The Court has reviewed and considered both responses to the Court's OSC. For the following reasons, the Court concludes that there is no federal right to a jury trial on the remaining issue and *sua sponte* converts the jury trial in this case to a court trial.

## II.
## DISCUSSION

As a preliminary matter, the Unruh Act does not provide a statutory right to jury trial. *See Smith v. Barton*, 914 F.2d 1330, 1336 (9th Cir. 1990) ("[B]efore addressing the constitutional issue, we first analyze whether the statute itself expresses any intent to grant [] a jury trial."); *see also* Cal. Civ. Code § 52(a) ("[Whoever is in violation of the Unruh Act] is liable for . . . any amount that may be determined by a jury, **or a court sitting without a jury**") (emphasis added). Nor does the Americans with Disabilities Act ("ADA")—which the Unruh Act incorporates—provide a right to a jury trial. *See Lutz v. Glendale Union High Sch.*, 403 F.3d 1061 (9th Cir. 2005) (concluding that there was no statutory right to jury trial where the state statute was modeled after a federal statute that did not provide a right to jury trial). Accordingly, there is no express statutory right to a jury trial in this case.

Further, the Seventh Amendment does not entitle the parties to a jury trial because the $4,000 in statutory damages under the Unruh Act is equitable in nature. To determine whether a claim is legal or equitable, the Court must: (1) compare the present action to 18th-century actions brought in the courts of England, and (2) "examine the remedy sought and determine whether it is legal or equitable in nature." *See Tull v. United States*, 481 U.S. 412, 417 (1987); *see also Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1012 ("[A]n award of monetary damages may constitute equitable relief if it is incidental to or intertwined with injunctive relief."). The second prong is the more important inquiry. *Tull*, 481 U.S. at 421. Because "there were no discrimination actions at common law" in the 18th-century, the Court focuses on the second, more important, prong. *See Smith*, 914 F.2d at 1337.

Here, although the Unruh Act provides for minimum statutory damages, this monetary relief is only available where there has been a violation of the ADA and is therefore merely incidental to the ADA's injunctive relief. *See Moeller v. Taco Bell Corp.*, 220 F.R.D. 612–13 (N.D. Cal. 2004) (concluding that the requested statutory relief under the Unruh Act was incidental to the injunctive relief under the ADA); *see also Curtis v. Loether*, 415 U.S. 189, 196 (1974)

Case: 24-5234, 08/26/2024, DktEntry: 11, Page 31 of 91
Case 2:23-cv-07378-DMG-AJR   Document 49   Filed 08/19/24   Page 3 of 3   Page ID
#:660

000031

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### CIVIL MINUTES—GENERAL

| Case No. | CV 23-7378-DMG (AJRx) | | Date | August 19, 2024 |
|---|---|---|---|---|

| Title | *Theresa Brooke v. Tsay Jbr LLC* | | Page | 3 of 3 |
|---|---|---|---|---|

(explaining that the award of monetary relief is not always a legal remedy); *Sakhrani v. City of San Gabriel*, No. CV 16-1756-CAS (PLAx), 2017 WL 507209, at *4 (C.D. Cal. Feb. 6, 2017) (collecting cases in which monetary relief has been considered an equitable remedy). Additionally, the Unruh Act explicitly separates *actual* damages from *statutory* damages, further suggesting that the $4,000 in statutory damages functions as a penalty that is merely incidental to the injunctive relief and, unlike actual damages, was not intended to be a basis for specific, discretionary monetary relief. *See Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000) ("The [Unruh Act] lists actual damages and statutory damages as two separate categories of damages that a plaintiff may recover."); *see also Angelucci v. Century Supper Club*, 41 Cal. 4th 160, 180 (2007) (describing the "constitutional constraints on the accrual of statutory penalties" under the Unruh Act).

### III.
### CONCLUSION

In light of the foregoing, the Court *sua sponte* **STRIKES** Defendant's jury trial demand and **CONVERTS** the jury trial in this action to a court trial. The April 15, 2024 OSC is **DISMISSED**, and all non-expired dates and deadlines set by the jury trial CMO are **VACATED**, including the August 20, 2024 Final Pretrial Conference. A new Scheduling and Case Management Order for Court Trial will issue.

**IT IS SO ORDERED.**

000032

# EXHIBIT 2

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 33 of 91
Case 2:23-cv-07378-MAA Document 1 Filed 09/06/23 Page 1 of 8 Page ID #:1

**000033**

P. Kristofer Strojnik, SBN 242728
pstrojnik@strojniklaw.com
Esplanade Center III, Suite 700
2415 East Camelback Road
Phoenix, Arizona 85016
415-450-0100 (tel.)

Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim, | Case No: |
| Plaintiff, | **VERIFIED COMPLAINT** |
| vs. | **(JURY TRIAL DEMANDED)** |
| TSAY JBR LLC, a California limited liability company, | |
| Defendant. | |

Plaintiff alleges:

### PARTIES

1.      Plaintiff Theresa Brooke is a married woman. Plaintiff is legally disabled, and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq., the California Unruh Civil Rights Act. Plaintiff ambulates with the aid of a wheelchair due to the loss of a leg.

2.      Defendant, Tsay Jbr LLC, owns and/or operates and does business as the hotel Ramada by Wyndham Burbank Airport located at 2900 North San Fernando Boulevard, Burbank, California 91504. Defendant's hotel is a public accommodation pursuant to 42 U.S.C. § 12181(7)(A), which offers public lodging services. On information and belief, Defendant's hotel was built or renovated after March 15, 2012.

## JURISDICTION

3.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 12188.

4.      Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district.

5.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b) and (c) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

6.      Pursuant to *Arroyo v. Rosas*, supplemental jurisdiction is appropriate over Plaintiff's Unruh claim. On a case-specific analysis, there are no compelling reasons to decline jurisdiction.

## ALLEGATIONS

7.      Plaintiff alleges that Defendant's hotel does not have a compliant access aisle at the passenger loading zone adjacent to the hotel lobby in violation of Sections 209 and 503 of the 2010 Standards. An access aisle has specific requirements to be compliant with the Standards: It must be (1) 60 inches wide and at least 20 feet long, (2) it must have an accessible route adjoining it, and (3) it cannot be within a vehicular way. Section 503.3.

8.      The requirement for an access aisle at a passenger loading zone is immensely important for a person in a wheelchair such as Plaintiff, as it provides safe access to the entry of the hotel and deters others from placing encumbrances or obstacles there such as a vehicle parking. An access aisle is akin to a cross-walk for pedestrians. Absence of an access aisle where required creates dangerous conditions for a person in a wheelchair such as Plaintiff.

9.      Plaintiff formerly worked in the hospitality industry. She and her husband are avid travelers to California for purposes of leisure travel and to "test" whether various hotels comply with disability access laws. Testing is encouraged by the Ninth Circuit.

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 35 of 91
Case 2:23-cv-07378-MAA   Document 1   Filed 09/06/23   Page 3 of 8   Page ID #:3

**000035**

10.     Plaintiff and her husband traveled to Los Angeles in late August 2023 for testing ADA compliance and leisure travel. She anticipates lodging at and has concrete plans to lodge at Defendant's hotel in February 2024. If she arrives and the violations alleged herein are not fixed, she will be precluded from lodging there again and her deterrence will continue.

11.     During this trip, Plaintiff personally visited Defendant's hotel. Defendant's hotel has a passenger loading zone because pickup and dropoff occurs there and it is located directly outside of the lobby entrance. There are also design features showing an intent for utilization as a passenger loading zone. For example, there is a *porte cochere*, which by definition is a design feature for passenger loading zones. According to the U.S. Access Board Technical Guidelines on Passenger Loading Zones, passenger loading zones are so common at hotels that even it recognizes "many hotel entrances" have the design features indicating an intent to utilize as PLZs.

12.     While at Defendant's hotel, she discovered that Defendant's hotel has a barrier to entry to the lobby, which is that the passenger loading zone does not have an access aisle compliant with Section 503.3. It is an absolute requirement to have an access aisle at a passenger loading zone pursuant to Sections 209 and 503. The requirement of an access aisle at a passenger loading zone relates to Plaintiff's disability of not having one leg and being forced to use a wheelchair because access aisles are required so persons in a wheelchair can maneuver without threat of danger from other vehicles and without other encumbrances obstructing their pathway. The lobby, therefore, is inaccessible to Plaintiff by way of the passenger loading zone because there is no access aisle.

13.     Additionally, Defendant's hotel provides for valet parking in the passenger loading zone area. Section 209.4 of the Standards requires a mandatory access aisle where valet parking services are provided, but Defendant does not provide for an access aisle as indicated above. Accordingly, Defendant also violates Section 209.4 because it provides for valet but does not provide for an access aisle.

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 36 of 91
Case 2:23-cv-07378-MAA   Document 1   Filed 09/06/23   Page 4 of 8   Page ID #:4

**000036**

14.     Plaintiff gained actual and personal knowledge of a barrier while visiting Defendant's hotel (no access aisle at passenger loading zone), and as a result, she was deterred from entering the hotel both from the barrier and due to the lack of equality. She anticipates returning to this hotel and has concrete plans to do so in February 2024 (see above), but she will only lodge at the hotel if Defendant puts the required access aisle into place and gives notice of such remediation before her definitive return. Visiting otherwise would be futile because the lack of the access aisle represents a barrier to entering the lobby.

15.     It is readily achievable and inexpensive to modify the hotel to provide an access aisle, which involves painting and measuring tools.

16.     Without injunctive relief, Plaintiff and others will continue to be unable to independently use Defendant's hotel in violation of her rights under the ADA.

### FIRST CAUSE OF ACTION

17.     Plaintiff incorporates all allegations heretofore set forth.

18.     Defendant has discriminated against Plaintiff and others in that it has failed to make its public lodging services fully accessible to, and independently usable by, individuals who are disabled in violation of 42 U.S.C. § 12182(a) and § 121282(b)(2)(iv) and the 2010 Standards, as described above.

19.     Defendant has discriminated against Plaintiff in that it has failed to remove architectural barriers to make its lodging services fully accessible to, and independently usable by individuals who are disabled in violation of 42 U.S.C. §12182(b)(A)(iv) and the 2010 Standards, as described above. Compliance with the 2010 Standards would neither fundamentally alter the nature of Defendant's lodging services nor result in an undue burden to Defendant.

20.     In violation of the 2010 Standards, Defendant's hotel passenger loading zone does not have a disability access aisle compliant with Section 503.3 of the Standards.

4

21.     Compliance with 42 U.S.C. § 12182(b)(2)(A)(iv) and the 2010 Standards, as described above, is readily achievable by the Defendant. *Id*. Readily achievable means that providing access is easily accomplishable without significant difficulty or expense.

22.     Defendant's conduct is ongoing, and Plaintiff invokes her statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

23.     Without the requested injunctive relief, Defendant's non-compliance with the ADA's requirements that its passenger loading zone be fully accessible to, and independently useable by, disabled people is likely to recur.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

a.  Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA;

b.  Permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its passenger loading zone into full compliance with the requirements set forth in the ADA;

c.  Payment of costs and attorney's fees;

d.  Provision of whatever other relief the Court deems just, equitable and appropriate.

### SECOND CAUSE OF ACTION

24. Plaintiff incorporates all allegations heretofore set forth.

25.     Defendant has discriminated against Plaintiff and others in that it has failed to make its public lodging services fully accessible to, and independently usable by, individuals who are disabled in violation of 42 U.S.C. § 12182(a) and § 121282(b)(2)(iv) and the 2010 Standards, as described above.

26.     Defendant has discriminated against Plaintiff in that it has failed to remove architectural barriers to make its lodging services fully accessible to, and independently usable by individuals who are disabled in violation of 42 U.S.C.

§12182(b)(A)(iv) and the 2010 Standards, as described above. Compliance with the 2010 Standards would neither fundamentally alter the nature of Defendant's lodging services nor result in an undue burden to Defendant.

27.     In violation of the 2010 Standards, Defendant's hotel valet parking area does not have a disability access aisle compliant with Section 209.4 of the Standards.

28.     Compliance with 42 U.S.C. § 12182(b)(2)(A)(iv) and the 2010 Standards, as described above, is readily achievable by the Defendant. *Id*. Readily achievable means that providing access is easily accomplishable without significant difficulty or expense.

29.     Defendant's conduct is ongoing, and Plaintiff invokes her statutory right to declaratory and injunctive relief, as well as costs and attorneys' fees.

30.     Without the requested injunctive relief, Defendant's non-compliance with the ADA's requirements that its valet parking area be fully accessible to, and independently useable by, disabled people is likely to recur.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

    a.  Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA;

    b.  Permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its valet parking area into full compliance with the requirements set forth in the ADA;

    c.  Payment of costs and attorney's fees;

    d.  Provision of whatever other relief the Court deems just, equitable and appropriate.

### THIRD CAUSE OF ACTION

31.     Plaintiff realleges all allegations heretofore set forth.

32.     Defendant has violated the Unruh by denying Plaintiff equal access to its public accommodation on the basis of her disability as outlined above.

33. Unruh provides for declaratory and monetary relief to "aggrieved persons" who suffer from discrimination on the basis of their disability.

34. Plaintiff has been damaged by the Defendant's non-compliance with Unruh.

35. Pursuant to Cal Civ. Code §52, Plaintiff is further entitled to such other relief as the Court considers appropriate, including monetary damages in an amount of $4,000.00, and not more.

36. Pursuant to Unruh, Plaintiff is entitled to attorney's fees and costs in an amount to be proven at trial.

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

   a. Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Unruh; and

   b. Permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its passenger loading zone into full compliance with the requirements set forth in the ADA;

   c. Payment of costs and attorney's fees;

   d. Damages in the amount of $8,000.00; and

   e. Provision of whatever other relief the Court deems just, equitable and appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on issues triable by a jury.

RESPECTFULLY SUBMITTED this 4th day of September, 2023.

                         */s/ P. Kristofer Strojnik*
                         P. Kristofer Strojnik (242728)
                         Attorneys for Plaintiff

### VERIFICATION

I declare under penalty of perjury that the foregoing is true and correct.

1    DATED this 4th day of September, 2023.

2

3

4

5
     _____
6
     Theresa Marie Brooke
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

000041

# EXHIBIT 3

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 42 of 91
Case 2:23-cv-07378-MAA   Document 7   Filed 10/02/23   Page 1 of 7   Page ID #:20

**000042**

1  James S. Link (SBN 94280)
2  Counselor & Advocate at Law
   215 N. Marengo, 3rd Floor
3  Pasadena, CA 91101
4  (626) 793-9570
   james.s.link@att.net
5
6  Attorney for Defendant Tsay JBR LLC

7
## UNITED STATES DISTRICT COURT
8
## CENTRAL DISTRICT OF CALIFORNIA
9

| | |
|---|---|
| 10 | |
| 11 THERESA BROOKE, a married woman dealing with her sole and | Case No.: 2:23-cv-07378-MAA |
| 12 separate claim, | **Answer To Complaint; Demand For Trial By Jury** |
| 13 Plaintiff, | |
| 14 | |
| 15 vs. | |
| 16 TSAY JBR LLC, a California Limited | |
| 17 Liability Company, | |
| 18 Defendant. | |

19      Defendant Tsay JBR LLC hereby responds to Plaintiff's complaint as follows:

20      1.      Answering paragraph 1, Defendant lacks sufficient information and

21  belief to respond to the allegations and on that basis denies generally and

22  specifically each and every allegation contained in the paragraph and the whole

23  thereof.

24      2.      Answering paragraph 2, Defendant admits it owns and operates the

25  Ramada by Wyndham Burbank Airport located at 2900 North San Fernando

26  Boulevard, Burbank, which hotel is a public accommodation offering public

27  lodging.  Except as herein expressly admitted, Defendant denies generally and

28  specifically each and every remaining allegation contained therein and the whole

1    thereof.

2    3.    Answering paragraph 3, Defendant denies generally and specifically

3    each and every allegation contained therein and the whole thereof.

4    4.    Answering paragraph 4, Defendant admits it does business within the

5    judicial district of this court.  Except as herein expressly admitted, Defendant denies

6    generally and specifically each and every remaining allegation contained in the

7    paragraph and the whole thereof.

8    5.    Answering paragraph 5, Defendant admits venue is proper.  Except as

9    herein expressly admitted, Defendant denies generally and specifically each and

10   every remaining allegation contained in the paragraph and the whole thereof.

11   6.    Answering paragraph 6, Defendant denies generally and specifically

12   the accuracy of plaintiff's alleged interpretation of Arroyo vs. Rosas and states there

13   are compelling reasons to decline supplemental jurisdiction.

14   7.    Answering paragraph 7, Defendant denies generally and specifically

15   each and every allegation contained therein and the whole thereof.  Defendant is

16   informed and believes and thereon alleges the hotel was constructed prior to the

17   enactment of the Americans with Disabilities Act and that the configuration of the

18   hotel has not been changed since at least 1989.  No loading zone was required when

19   the hotel was built.

20   8.    Answering paragraph 8, Defendant denies generally and specifically

21   each and every allegation contained in the paragraph and the whole thereof.

22   9.    Answering paragraph 9, Defendant lacks sufficient information and

23   belief to respond to the allegations that plaintiff worked in the hotel industry and

24   that she and her husband are avid travelers.  Defendant denies the 9th Circuit

25   encourages tester litigation.  Except as so denied, Defendant denies generally and

26   specifically each and every allegation contained in the paragraph and the whole

27   thereof.

28   10.   Answering paragraph 10, Defendant lacks sufficient information and

1   belief to respond to the allegations that plaintiff visited the property and on that

2   basis denies generally and specifically those allegations.  Except as so denied,

3   Defendant denies generally and specifically each and every remaining allegation

4   contained in the paragraph and the whole thereof.

5       11.   Answering paragraph 11, on information and belief, Defendant denies

6   generally and specifically each and every allegation alleged therein and the whole

7   thereof.

8       12.   Answering paragraph 12, Defendant denies generally and specifically

9   each and every allegation contained therein and the whole thereof.

10      13.   Answering paragraph 13, Defendant denies generally and specifically

11  each and every allegation contained therein and the whole thereof.  Defendant

12  admits while resurfacing the parking lot it temporary used valet parking.

13      14.   Answering paragraph 14, Defendant denies generally and specifically

14  each and every allegation contained therein and the whole thereof.

15      15.   Answering paragraph 15, Defendant denies generally and specifically

16  each and every allegation contained therein and the whole thereof.

17      16.   Answering paragraph 16, Defendant incorporates by reference as

18  though fully set forth at length the responses to paragraphs 1 through 15, inclusive.

19      17.   Answering paragraph 17, Defendant denies generally and specifically

20  each and every allegation contained therein and the whole thereof.

21      18.   Answering paragraph 18, Defendant denies generally and specifically

22  each and every allegation contained therein and the whole thereof.

23      19.   Answering paragraph 19, Defendant denies generally and specifically

24  each and every allegation contained therein and the whole thereof.

25      20.   Answering paragraph 20, Defendant denies generally in specifically

26  each and every allegation contained in the paragraph and the whole thereof.

27      21.   Answering paragraph 21, Defendant denies generally and specifically

28  each and every allegation contained therein and the whole thereof.

22. Answering paragraph 22, Defendant denies generally and specifically each and every allegation contained therein and the whole thereof.

23. Answering paragraph 23, Defendant incorporates by reference as though fully set forth at length the responses to paragraphs 1 through 22, inclusive and the prayer.

24. Answering paragraph 24, Defendant denies generally and specifically each and every allegation contained therein and the whole thereof.

25. Answering paragraph 25, Defendant denies generally and specifically each and every allegation contained therein and the whole thereof.

26. Answering paragraph 26, Defendant denies generally and specifically each and every allegation contained therein and the whole thereof.

27. Answering paragraph 27, Defendant denies generally and specifically each and every allegation contained therein and the whole thereof.

28. Answering paragraph 28, Defendant denies generally and specifically each and every allegation contained therein and the whole thereof.

## FIRST AFFIRMATIVE DEFENSE

1. Plaintiff is barred from injunctive relief by the equitable doctrine of "unclean hands." Defendant is informed and believes and based on such information and belief alleges Plaintiff is a serial litigant with at least 491 Americans with Disabilities Act (ADA) cases filed in the United States District Courts, the vast majority of which were filed on or after January 1, 2021 (436 cases), and all of which assert allegations against hotels and motels for the alleged lack of access aisles for alleged loading zones. Exhibit 1 attached hereto is a compilation of information from those 491 cases. Defendant is further informed and believes in based on such information and belief alleges plaintiff has filed more than 1800 ADA cases. In each case, in order to seek injunctive relief, plaintiff alleges that she intends to return to each of the public accommodations allegedly visited and sued but has been deterred from doing so. The implausibility of plaintiff having real intent to return as a

**ANSWER TO COMPLAINT**

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 46 of 91
Case 2:23-cv-07378-MAA   Document 7   Filed 10/02/23   Page 5 of 7   Page ID #:24

**000046**

1 | customer, guest or patron in part shows the litigation is contrived to extort

2 | settlements for damages and attorney fees and not secure injunctive relief that she

3 | does not need and would not use.  A sampling of Exhibit 1 shows the implausibility

4 | of plaintiff's alleged intent to return:

5 |        In 26 cases, plaintiff alleged that she intended to return in the "summer"

6 | of 2018 to Fresno, Sacramento, San Diego, and Woodland to the hotels sued in

7 | those actions. Exh. 1, Nos. 16-20, 31-40, 42-45, 47-54.  (She also alleged she

8 | would visit Woodland in September 2018. Exh.1, No. 41.)  But, she also

9 | alleged in 9 cases by more specific summer months in 2018 that she would be

10 | visiting San Jose in the summer of 2018. Exh. 1, Nos. 21, 23-26, 29-30.

11 |        In 32 cases, she alleged that she intended in May 2023 to return to the

12 | hotels sued in the cities of Torrance, Culver City, Marina Del Rey, Carson,

13 | Redondo Beach, Wilmington, Lancaster, Palmdale, Valencia, Burbank and

14 | Glendale.  Exh. 1, Nos. 328-358.

15 |        Viewing two months of alleged returns, plaintiff alleges in August and

16 | September 2023 she will visit 40 hotels in Anaheim, Irvine, Santa Anna,

17 | Fullerton, Buena Park, Whittier, Pomona, Newport Beach, Huntington Beach,

18 | Orange, Hawthorne, Westminster, El Segundo, Los Angeles, Santa Monica,

19 | Monterey Park, Arcadia, Cathedral City, Yucca Valley, 29 Palms, and Indian

20 | Wells that she had sued. Exh. 1, Nos. 399-438.

21 |        Viewing another two months for alleged returns, plaintiff alleges in

22 | February and April 2024 she will visit 26 hotels that in North Hollywood,

23 | Glendale, Valley Village, Los Angeles, Pasadena, Burbank, Duarte, Universal

24 | City, and West Hollywood. Exh. 1, Nos. 466-491.

25 |        Further demonstrating that Plaintiff will not return to the public

26 | accommodations and is not deterred from doing so, she lives in Coolidge, Arizona

27 | over 400 miles from the property in issue in this action.

28 |

5

**ANSWER TO COMPLAINT**

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 47 of 91
Case 2:23-cv-07378-MAA   Document 7   Filed 10/02/23   Page 6 of 7   Page ID #:25

**000047**

1
**SECOND AFFIRMATIVE DEFENSE**

2
2.      Although Defendant denies that Plaintiff has been damaged in any way,

3
if it should be determined that Plaintiff has been damaged, then Defendant alleges,

4
based on information and belief, that Plaintiff has failed to mitigate the purported

5
damages and further alleges, to the extent any damages could have been mitigated,

6
such sums should be deducted from any award of damages to Plaintiff.

7
**THIRD AFFIRMATIVE DEFENSE**

8
3.      Defendant is informed and believes and thereon alleges the accessible

9
parking space on the property near the lobby entrance was and is equivalent

10
facilitation under the Americans with Disabilities Act. That parking space is

11
immediately adjacent to the ramp that provides access for those with disabilities.

12
The photograph below on the left shows the ramp and path of travel from the

13
accessible parking spaces to the ramp.  The photograph below on the  right shows the

14
accessible parking spaces that terminate at the path of travel.

15
16
17
18
19
20
21
22
23
24
25
26



27
Defendant is informed and believes and thereon alleges that plaintiff's access to the

28
hotel was not impeded.

**ANSWER TO COMPLAINT**

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 48 of 91
Case 2:23-cv-07378-MAA   Document 7   Filed 10/02/23   Page 7 of 7   Page ID #:26

**000048**

**FOURTH AFFIRMATIVE DEFENSE**

4.      Defendant alleges on information and belief the passenger loading zone and access aisle sought by plaintiff pursuant to the ADAAG regulations or the 2010 Standards For Accessible Design, even if required, are not capable of being remediated on a readily achievable basis because they are not easily accomplishable and are not capable of being carried out without much difficulty or expense. Defendant is further informed and believes and thereon alleges that the installation of an access aisle in the existing space would not be compliant with 2010 Standards because the access aisle would overlap the vehicular way.  Defendant is also informed and believes and thereon alleges that the costs to be incurred for the alleged remediation exceeds the amount that is considered readily achievable, regardless of the financial condition of defendant, as a matter of law.  See e.g., *Moore v. Robinson Oil Corp.*, 2012 U.S. Dist. LEXIS 80780, 20-22 (N.D. Cal. June 11, 2012); *Moore v. Robinson Oil Corp.*, 588 F. App'x 528, 529 (9th Cir. 2014); *Rodriguez v. Barrita, Inc.*, 10 F. Supp. 3d 1062, 1072 (N.D. Cal. 2014); *Core v. Nese*, 2020 U.S. Dist. LEXIS 209842 (C.D. Cal. 2020).

WHEREFORE, Defendant prays for judgment as follows:

1.  That Plaintiff take nothing by this action;

2.  For costs of suit incurred herein, including reasonable attorney's fees;

3.  For such other and further relief as the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Defendant Tsay JBR LLC demands trial by jury.


Date:  October 2, 2023            James S. Link
                                 Counselor & Advocate at Law

                                 _____
                                 James S. Link
                                 Counsel for Defendant Tsay JBR LLC

**ANSWER TO COMPLAINT**

000049

# EXHIBIT 4

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 50 of 91
Case 2:23-cv-07378-DMG-AJR   Document 35   Filed 03/20/24   Page 1 of 17   Page ID #:521

**000050**

1

2

3

4

5

6

7

8      **UNITED STATES DISTRICT COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA**

10

11                                    )   Case No. CV 23-7378-DMG (AJRx)
                                       )
12     THERESA BROOKE,                 )
                                       )
13                        Plaintiff,   )   **ORDER RE PLAINTIFF'S MOTION**
                                       )
14                 v.                  )   **FOR SUMMARY JUDGMENT AND**
                                       )
15     TSAY JBR, LLC,                  )   **DEFENDANT'S MOTION FOR BOND**
                                       )
16                        Defendant.   )   **[20] [22]**
                                       )
17                                     )
                                       )
18                                     )
                                       )
19   _____)

20

21

22

23

24

25

26

27

28

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 51 of 91
Case 2:23-cv-07378-DMG-AJR   Document 35   Filed 03/20/24   Page 2 of 17   Page ID #:522

**000051**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

This matter is before the Court on Plaintiff Theresa Brooke's Motion for Summary Judgment ("MSJ") and Defendant Tsay Jbr, LLC's Motion for Bond ("MFB"). The Court held a hearing on March 15, 2024. For the reasons set forth herein, the Motion for Summary Judgment is **GRANTED in part and DENIED in part**, and the Motion for Bond is **DENIED**.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND[1]**

Plaintiff Theresa Brooke is disabled and uses a wheelchair. Compl. ¶ 1 [Doc. # 1]; SUF ¶¶ 2, 3. Although she lives in Arizona, she and her husband routinely travel to California both for leisure and to conduct testing for compliance with the Americans with Disabilities Act ("ADA"). RSGD ¶ 42; SUF ¶ 7; MFB Opp. at 12.[2] In August 2023, they visited the hotel Ramada by Wyndam Burbank Airport, located at 2900 San Fernando Blvd., Burbank, California 91504, which Defendant owns. RSGD ¶ 5. But while at the hotel, Plaintiff discovered two barriers to her access to the lobby: first, the hotel's "passenger loading zone" does not have an access aisle in which Plaintiff could maneuver her wheelchair, and second, the hotel's "valet stand" did not have an access

---

[1] The factual background summarizes the uncontroverted facts, unless otherwise indicated. The Court deems a fact to be uncontroverted even where a party purports to "dispute" it if that party has presented no evidence that creates a genuine dispute of material fact.

Plaintiff submitted a Statement of Uncontroverted Facts ("SUF") in support of her MSJ [Doc. # 21], and Defendant submitted a Statement of Genuine Disputes in response to Plaintiff's SUF ("SGD") [Doc. # 28-12]. In support of her Reply, Plaintiff submitted a Response to Defendant's SGD ("RSGD") [Doc. # 32.] Where possible, the Court cites to the undisputed facts in the SGD and RSGD.

[2] Page citations herein refer to the page number inserted by the CM/ECF system.

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 52 of 91
Case 2:23-cv-07378-DMG-AJR   Document 35   Filed 03/20/24   Page 3 of 17   Page ID #:523

**000052**

aisle. *Id.* at ¶¶ 16, 17. Although she was deterred from entering the hotel at that time, Plaintiff states she and her husband have a reservation to return to the hotel—*if* Defendant establishes an access aisle. *Id.* at ¶¶ 22, 23; Declaration of Theresa Brooke ("Brooke Decl.") ¶ 5 [Doc. # 32-1].

On September 6, 2023, Plaintiff filed a Complaint asserting claims under the ADA, 42 U.S.C. § 12182, and California's Unruh Civil Rights Act, Cal. Civ. Proc. Code § 52. [Doc. # 1.] On October 2, 2023, Defendant filed an Answer to the Complaint. [Doc. # 7.] On January 26, 2024, Plaintiff moved for summary judgment. [Doc. # 20 ("MSJ")]. The MSJ is fully briefed. [Doc. ## 28 ("MSJ Opp."), 31 ("MSJ Reply")]. On January 31, 2024, Defendant filed a Motion for Bond. [Doc. # 22 ("MFB")]. The MFB is also fully briefed. [Doc. ## 29 ("MFB Opp."), 30 ("MFB Reply")]. The Court issues the following ruling resolving both motions.

## II.
## LEGAL STANDARDS

### A.   Motion for Summary Judgment

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A

dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, the nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." *Id.*

**B.   Motion for Bond**

While the Federal Rules of Civil Procedure do not have a "specific provision . . . relating to security for costs," district courts "have inherent power [and discretion] to require plaintiffs to post security for costs." *Simulnet E. Assocs. v. Ramada Hotel Operating Co.*, 37 F.3d 573, 574 (9th Cir. 1994). The question of whether to impose a bond requires district courts to look to the forum state's law. *Id.* ("Typically federal

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 54 of 91
Case 2:23-cv-07378-DMG-AJR   Document 35   Filed 03/20/24   Page 5 of 17   Page ID #:525

**000054**

courts, . . . follow the forum state's practice with regard to security for costs . . . ."); *see also Pittman ex rel. L.P. v. Avish P'ship*, 525 F. App'x 591, 593 (9th Cir. 2013). The California Civil Procedure Code permits courts to require "an undertaking to secure an award of costs and attorney's fees" from a plaintiff. Cal. Civ. Proc. Code § 1030(b). A defendant may move for such an undertaking when: (1) "plaintiff resides out of the state or is a foreign corporation" and (2) "there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding." *Id.* A defendant does not need to show that there is "no possibility" that the plaintiff could win at trial, "but only that it [is] *reasonably possible*" that the defendant will win. *Baltayan v. Estate of Getemyan*, 90 Cal. App. 4th 1427, 1432 (2001).

This hurdle is a "relatively low" one. *AF Holdings LLC v. Navasca*, 2013 WL 450383, at *1 (N.D. Cal. Feb. 5, 2013). Although district courts have suggested the standard is not so generous "as to require every out-of-state litigant who brings a non-frivolous suit in California to post a bond," *see, e.g., Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 3:12-CV-04000-SC, 2015 WL 6638929, at *16 (N.D. Cal. Oct. 30, 2015), the Ninth Circuit has held that district courts do not abuse their discretion by requiring a security when it would not be "illogical, implausible, or without support in the record to conclude that there [is] a reasonable possibility that [the defendant] would prevail" and be entitled to fees and costs. *Pittman*, 525 F. App'x at 593.

Courts should also "balance several factors in assessing the propriety of requiring a plaintiff to post security for costs, including whether the litigation has 'the appearance of vexatiousness' and: (i) the degree of probability/improbability of success on the merits, and the background and purpose of the suit; (ii) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective; and (iii) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective." *A. Farber & Partners, Inc. v. Garber*, 417 F. Supp. 2d 1143, 1146 (C.D. Cal. 2006) (citing *Simulnet*, 37 F.3d at 576).[3]

## III.
## DISCUSSION

### A. Motion for Summary Judgment

To prevail on a discrimination claim under Title III of the ADA, a plaintiff must show that (1) the plaintiff is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of her disability. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citations omitted). A defendant may be found liable for such a claim where it fails to remove easily removable architectural barriers or does not construct facilities "readily

---

[3] The Court shall refer to these factors as the *Simulnet* factors.

accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183(a)(1); *id.*

§ 12182(b)(2)(A)(iv); *see Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945

(9th Cir. 2011) (*en banc*).

No genuine dispute of material fact exists regarding whether Plaintiff is disabled

within the meaning of the ADA, or whether, at all relevant times, Defendant owned

and operated a place of public accommodation. *See* SGD ¶¶ 2–5 [Doc. # 28-12]; *see*

*also* 42 U.S.C. § 12181(7)(A) ("The following private entities are considered public

accommodations for purposes of this subchapter, if the operations of such entities affect

commerce . . . an inn, hotel, motel, or other place of lodging . . . ."). The parties only

dispute whether: (1) Plaintiff has standing to seek injunctive relief under the ADA; (2)

the removal of the alleged barriers from the parking lot is "readily achievable" within

the meaning of the ADA; and (3) Plaintiff is entitled to damages under California's

Unruh Act.

### 1. Standing Under the ADA

To establish standing to seek injunctive relief under the ADA, a plaintiff "must

demonstrate that he has suffered an injury-in-fact, that the injury is traceable to the

[defendant's] actions, . . . that the injury can be redressed by a favorable decision[,] . .

. . [and that there is] a 'real and immediate threat of repeated injury' in the future." *See*

*Chapman*, 631 F.3d at 946 (quoting *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d

1075, 1081 (9th Cir. 2004)). An ADA plaintiff suffers an injury-in-fact if he or she

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 57 of 91
Case 2:23-cv-07378-DMG-AJR   Document 35   Filed 03/20/24   Page 8 of 17   Page ID #:528

**000057**

"encounters an accessibility barrier" that "interfere[s] with the plaintiff's 'full and equal enjoyment' of the facility." *See id.* at 947 (quoting 42 U.S.C. § 12182(a)). Further, "an ADA plaintiff can show a likelihood of future injury . . . . when discriminatory architectural barriers deter him from returning to a noncompliant accommodation." *See id.* at 949.

Defendant bases its argument that Plaintiff lacks standing primarily on the fact that Brooke is a high-frequency ADA litigant. Essentially, Defendant contends that it is impossible for Brooke to actually stay in all of the hotels she visits, and thus there is no "concrete harm" or "real and immediate threat of repeated injury." MSJ Opp. at 17. Defendant is correct that Plaintiff would lack Article III standing if she did not have an intent to return to Defendant's hotel. *See Spokeo v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation"); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 434 (2021) (finding no concrete harm where there was only a "mere presence" of a statutory violation but no actual harm to the plaintiffs). In the context of this case, however, Defendant's argument that Plaintiff lacks standing fails for two reasons.

First, it is not impossible for Plaintiff to stay at every hotel where she has a pending lawsuit and a future reservation. According to Defendant's own records of Plaintiff's pending actions, during June 2024, Plaintiff allegedly intends to return to

and stay at 16 hotels that she has sued.[4]   MSJ Opp., Ex. 6 at 56–57 [Doc. # 28-8]. While the Court agrees with Defendant that it seems *unlikely* that Plaintiff will be able to stay at *every* hotel she visits in her role as an ADA tester, it is not *impossible* to stay at 16 hotels in 30 days.

Second, the Ninth Circuit has instructed courts to "take a broad view of standing in civil rights cases, particularly in the ADA context where private enforcement is the primary method of securing compliance with the act's mandate." *Langer v. Kiser*, 57 F.4th 1085, 1099 (9th Cir. 2023).   Here, Brooke asserts in both her verified Complaint and her declaration that she and her husband have an upcoming reservation at Defendant's hotel in June 2024, and that it is her present intention to keep that reservation.   Compl. ¶ 10; Brooke Decl. ¶ 5; MSJ Reply at 14; *see Civ. Rts. Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1100 (9th Cir. 2017) ("[C]oncrete travel plans would be sufficient to show that a disabled plaintiff intends to visit a facility . . . ."). Brooke said the same about her February reservation at Defendant's hotel, and she did indeed return in February, but she did not stay overnight because Defendant had not remedied the alleged ADA violations.   RSGD ¶ 22.   The Court therefore assumes for the purpose of this motion that Brooke has such a reservation in June and intends to return to Defendant's hotel.   *See Langer*, 57 F.4th at 1097 ("[T]here must be

---

[4] During the hearing, Defendant argued that it was impossible for Plaintiff to stay at 26 hotels in 30 days.   It is not clear from the record, nor was it clear during oral argument, what Defendant relies upon to get to the "26" number.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

something other than the fact that [an ADA tester] litigant files a lot of ADA cases to instill doubt in [her] testimony.").

Based on binding Ninth Circuit precedent holding that the fact that a plaintiff is a serial litigant "has no place in our standing analysis" and because Defendant does not offer any other reasons to challenge Plaintiff's standing, the Court concludes that Brooke has standing to seek injunctive relief under the ADA.  *See id.* at 1094.

**2. Readily Achievable**

**a. Passenger Loading Zone**

The Ninth Circuit has adopted the Second Circuit's burden-shifting framework for determining whether removal of an architectural barrier is "readily achievable." *Lopez v. Catalina Channel Express, Inc.*, 974 F.3d 1030, 1038 (9th Cir. 2020).  Under that approach, ADA plaintiffs are first required to "articulate a plausible proposal for barrier removal, 'the costs of which, facially, do not clearly exceed its benefits.'" *Id.* (quoting *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995).  The burden then shifts to the defendant to try to establish that the costs of the plaintiff's proposal would, in fact, exceed its benefits.  *Id.*

Under both the 1991 and 2010 ADA Standards, passenger loading zones must be accompanied by an adjacent access aisle. 1991 ADA Standards for Accessible Design § 4.6.6 ("Passenger loading zones shall provide an access aisle . . . . adjacent and parallel to the vehicle pull-up space."); 2010 ADA Standards for Accessible Design

**000060**

§ 5.3.3 ("Passenger loading zones shall provide access aisles . . . . adjacent to the vehicle pull-up space.")  Here, as a preliminary matter, the parties do not dispute, at least for purposes of this motion, that there is a passenger loading zone ("PLZ") under the *porte cochere* at Defendant's hotel.  SGD ¶¶ 9, 12.  The parties only dispute whether the PLZ is in violation of the ADA if it is not accompanied by an access aisle, and if an access aisle is required, what creating an access aisle would entail.

Plaintiff first argues that it is readily achievable to paint an access aisle alongside the PLZ, remove part of the curb to create a "curb cut" for wheelchairs, and create a ramp in place of the stairs that currently exist.  MSJ Reply at 6.  Alternatively, Plaintiff argues that it is at least readily achievable to paint an access aisle that connects the PLZ to the ramp that Defendant has already installed.  MSJ Reply at 9.  Defendant contends, however, that Plaintiff's initial proposal is not readily achievable, and her second proposal is "useless."  MSJ Opp. at 10–13.

First, Plaintiff is not entitled to summary judgment on her claim that her initial proposal is "readily achievable."  Plaintiff argues that Defendant should have implemented her proposal during its 2018–2019 renovation of the hotel.  MSJ Reply at 6.  As Defendant points out, however, that renovation only entailed painting and upgrading the walls and furniture, which did not affect the "usability of the building."  Declaration of Robert Tsay ("Tsay Decl.") ¶ 8 [Doc. # 28-1]; *see* 28 C.F.R. § 36.402(b)(1).  If Defendant adopted Plaintiff's initial proposal now, it would likely be

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 61 of 91
Case 2:23-cv-07378-DMG-AJR   Document 35   Filed 03/20/24   Page 12 of 17   Page ID #:532

**000061**

at a significant cost.  Plaintiff correctly points out that the regulation lists "installing ramps" as "readily achievable," but the regulation does not include the demolition of already-existing stairs to then replace them with a ramp.  Rather, it simply means that installing a ramp anew is readily achievable, which is something Defendant has already done.  MSJ Opp. at 7.  And even if the cost of Plaintiff's plan is not as substantial as Defendant argues it is, the proposal's potential benefit is especially low given that there is already a ramp leading to the hotel lobby directly adjacent to the PLZ.  The Court **DENIES** Plaintiff's MSJ as to her first proposal within her ADA claim.

The Court does find, however, that Plaintiff is entitled to summary judgment with regard to her claim that her second proposal is readily achievable.  Although Defendant argues that painting an access aisle in front of the PLZ is "useless," it would provide another area—in addition to the accessible parking spaces—in which persons with disabilities could safely exit their vehicles and access the hotel's ramp.  Given the extremely low cost of "a can of paint and a stencil," the access aisle only needs to confer a minimal benefit to meet the Ninth Circuit's standards for being "readily achievable."  *See* MSJ at 12.  The Court therefore concludes that Plaintiff has shown there is "no genuine issue of material fact" regarding whether painting an access aisle directly in front of the PLZ and adjacent to the existing access aisle is readily achievable.  The Court **GRANTS** Plaintiff's MSJ as to her second proposal within her ADA claim.

**000062**

### b. Temporary Valet Service

The ADA regulations require that "accessible passenger loading zones" must be provided at "parking facilities where valet parking service is provided." MSJ, Ex. 1 at 1 ("PLZ Guidelines") [Doc. # 20-1.] Brooke argues that Defendant violated the ADA when it allegedly offered a temporary valet service without an access aisle. MSJ at 12; MSJ Reply at 10–12. It is undisputed that the valet service was only offered for two days due to parking lot resurfacing at the hotel. SGD ¶ 36. The dispute is over whether the temporary valet was an inaccessible "amenity" or a "temporary obstruction" due to the resurfacing of the parking lot. MSJ Opp. at 14. The Court need not answer this question. As Plaintiff already concedes, because Defendant has shown that it only temporarily employed a valet service due to parking lot resurfacing and does not intend to ever utilize a regular valet service at the hotel, this issue is moot. MSJ Reply at 12; *see Johnson v. Oishi*, 362 F. Supp. 3d 843, 848 (E.D. Cal. 2019). The Court **DENIES** Plaintiff's MSJ as to her ADA claim regarding the temporary valet service.

### 3. Damages Under California's Unruh Act

A plaintiff may establish a violation of the Unruh Act by establishing a violation of the ADA. *See* Cal. Civ. Code § 51(f). In order to recover damages, a plaintiff must demonstrate either that: (1) she suffered "difficulty, discomfort, or embarrassment" as a result of her encounter with the barrier, or (2) the barrier deterred her from accessing the place of public accommodation. *Id.* § 55.56; *see Arroyo v. Rosas*, 19 F.4th 1202,

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 63 of 91
Case 2:23-cv-07378-DMG-AJR   Document 35   Filed 03/20/24   Page 14 of 17   Page ID #:534

**000063**

1214 (9th Cir. 2021).  A plaintiff demonstrates that she was deterred by showing:  (a) she had "actual knowledge of a violation or violations that prevented or reasonably dissuaded the plaintiff from accessing a place of public accommodation that the plaintiff intended to use on a particular occasion" and (b) "the violation or violations would have actually denied the plaintiff full and equal access if the plaintiff had accessed the place of public accommodation on that particular occasion."  Cal. Civ. Code § 55.56(d); *Kohler v. Rednap, Inc.*, 794 F. Supp. 1091, 1094 (C.D. Cal. 2011).

Here, the Court has already concluded that Defendant violated the ADA by failing to paint an access aisle in the PLZ.  *See supra.,* Part A(2)(b).  As Defendant correctly points out, however, an award of damages under the Unruh Act is not "automatic."  MSJ Opp. at 19.  Plaintiff argues that she was deterred by the barrier, but provides no evidence that that she suffered "difficulty, discomfort, or embarrassment."  MSJ Reply at 18; *see Arroyo*, 19 F.4th at 1214.  Because the pre-existing ramp was directly adjacent to the PLZ and Defendant has shown that there is a factual dispute as to whether the temporary open valet stand actually deterred Plaintiff or caused her "difficulty, discomfort, or embarrassment," the Court **DENIES** Plaintiff's MSJ with regard to her Unruh Act claim.

**B. Motion for Bond**

The parties do not dispute that Plaintiff resides in the State of Arizona, so the Court need only decide whether "there is a reasonable possibility that the moving

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 64 of 91
Case 2:23-cv-07378-DMG-AJR  Document 35  Filed 03/20/24  Page 15 of 17  Page ID #:535

**000064**

defendant will obtain judgment in this action" and apply the *Simulnet* factors.  MFB

Opp. at 12; Cal. Civ. Proc. Code § 1030(b).  Because the second *Simulnet* factor "is

similar to the second factor under California Civil [Procedure] Code section 1030," the

Court will consider the requirements together when it analyzes the second *Simulnet*

factor.  *A. Farber & Partners*, 417 F. Supp. 2d at 1148.

The first factor—whether the litigation appears vexatious—is particularly

relevant in this case.  In fact, in 2012, California adopted a heightened pleading

standard for lawsuits brought under the Unruh Act precisely for the purpose of

combatting the influx of baseless claims and vexatious litigation in the disability access

litigation sphere.  Cal. Civ. Code § 55.52(a)(1).  For the same reasons, California also

imposed a "high-frequency litigant fee" in 2015 in response to the "special and unique

circumstances" presented by certain plaintiffs and law firms filing an outsized number

of Unruh Act lawsuits.  Cal. Gov't Code § 70616.5.  Here, Theresa Brooke is a high-

frequency litigant who currently has filed at least 537 actions against hotels for failure

to have access aisles in PLZs.  MFB at 4.  But she readily acknowledges that she is a

tester and there is no rule prohibiting testers from filing ADA lawsuits.  The Court

therefore concludes that, while this litigation has "the appearance" of vexatiousness,

the first factor weighs only weakly in favor of Defendant.

Regarding the second factor and the requirement that Defendant is likely to

succeed on the merits, the Court concludes that this factor also weighs in favor of

Defendant.  The Court has just considered the merits of Plaintiff's case and ruled against Plaintiff except as to one discrete claim.  Although an unfavorable MSJ ruling does not always equate to a loss at trial, should there be one, it is not "illogical, implausible, or without support in the record to conclude that there [is] a reasonable possibility that [the defendant] would prevail." *See Pittman*, 525 F. App'x at 593.

Consideration of the third and fourth factors—the reasonable extent of the security to be posted viewed from both sides' perspectives—requires the Court to substantially reduce the amount Defendant seeks.  Similar to Defendant's argument that Plaintiff lacks standing due to being a high-frequency litigant, much of Defendant's briefing on its motion for a bond is focused on how many lawsuits Brooke has filed and speculation about how much money she has received from those lawsuits. Reply at 4.  Defendant also simply reiterates many of its arguments from the opposition to summary judgment.  *See, e.g.*, MFB at 11 (explaining that the access aisle would be "useless").  Meanwhile, Plaintiff has offered (largely undisputed) evidence that she cannot afford to pay $55,000 in bond.  Declaration of Theresa Brooke ("Brooke Decl.") ¶¶ 5–7 [Doc. # 29-3].  Courts must be careful not to "deprive a plaintiff of access to the federal courts" by forcing them to post an excessive bond.  *Simulnet*, 37 F.3d at 575-76 ("toll-booths cannot be placed across the courthouse doors in a haphazard fashion.").  Accordingly, the Court finds that the third and fourth factors weigh strongly against Defendant.

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 66 of 91
Case 2:23-cv-07378-DMG-AJR   Document 35   Filed 03/20/24   Page 17 of 17   Page ID #:537

000066

Because the factors are split relatively evenly between the parties, the Court **DENIES** Defendant's Motion for Bond.

## IV.
## CONCLUSION

In light of the foregoing, Plaintiff's MSJ is **GRANTED in part and DENIED in part**. Defendant's Motion for Bond is **DENIED**. Defendant shall paint a blue access aisle in front of the hotel's PLZ, under the *porte cochere*, connecting it to the adjacent blue access aisle, in compliance with the standards set forth in the PLZ Guidelines. The parties shall file a Joint Status Report **by no later than April 3, 2024** detailing their efforts to resolve the remaining issues in this case.[5]

**IT IS SO ORDERED.**

DATED:  March 20, 2024

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

_____

[5] Due to a clerical error, the Scheduling and Case Management Order [Doc. # 23] and Order/Referral to ADR [Doc. # 24] identify incorrect dates for the completion of ADR proceedings and the filing of a joint status report re settlement. In their Joint Status Report, the parties shall propose new dates for the completion of ADR proceedings if they are unable to agree upon a prompt resolution of the remaining issues in this case.

000067

# EXHIBIT 5

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 68 of 91
Case 2:23-cv-07378-DMG-AJR   Document 38   Filed 04/15/24   Page 1 of 2   Page ID #:542

**000068**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 23-7378-DMG (AJRx)** | Date | April 15, 2024 |

| | | | |
|---|---|---|---|
| Title | ***Theresa Brooke v. Tsay Jbr LLC*** | Page | **1** of **2** |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KELLY DAVIS | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings:  IN CHAMBERS—ORDER TO SHOW CAUSE WHY THE JURY TRIAL
IN THIS CASE SHOULD NOT BE CONVERTED TO A COURT TRIAL**

On March 20, 2024, the Court granted in part and denied in part Plaintiff Theresa Brooke's Motion for Summary Judgment ("MSJ").  [Doc. # 35.]  Pursuant to the Court's Order, the Parties filed a joint status report detailing their efforts to resolve the remaining issues in this case on March 26, 2024.  The Parties informed the Court that Defendant had rejected Brooke's most recent settlement offer and "decided to proceed with the trial of the action to secure a final judgment in order to appeal the Court's ruling on Article III standing."  [Doc. # 36 at 2].[1]

This case is currently scheduled for a 2-to-3-day jury trial, set to begin on September 17, 2024.  *See* Scheduling and Case Management Order at 18 [Doc. # 23 ("CMO")].  Federal Rule of Civil Procedure 39(a), however, allows the Court to convert the trial in this action from a jury trial to a court trial.  *See* Fed. R. Civ. P. 39(a) ("When a jury trial has been demanded under Rule 38 . . . [t]he trial on all issues so demanded must be by jury unless . . . the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial."); *see also Shabaz v. Polo Ralph Lauren Corp.*, 586 F. Supp. 2d 1205, 1211 (C.D. Cal. 2008) ("A district court may strike a jury demand if the court finds that the issues presented are not entitled to a jury trial.").

The only remaining triable issue in this action is the civil penalty under California's Unruh Act, which is not entitled to a jury trial for the following reasons.  First, the Unruh Act does not provide a statutory right to jury trial.  *See* Cal. Civ. Code § 52(a) ("[Whoever is in violation of the Unruh Act] is liable for . . . any amount that may be determined by a jury, **or a court sitting without a jury**") (emphasis added); *see also Lutz v. Glendale Union High Sch.*, 403 F.3d 1061 (9th Cir. 2005) (concluding that there was no statutory right to jury trial where the state statute was modeled after a federal statute that did not provide a right to jury trial).  Here, the Unruh Act incorporates the Americans with Disabilities Act ("ADA") and provides a state law cause of action

---

[1] Page citations herein refer to the page number inserted by the CM/ECF system.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | CV 23-7378-DMG (AJRx) | Date | April 15, 2024 |
|---|---|---|---|

| Title | *Theresa Brooke v. Tsay Jbr LLC* | Page | **2** of **2** |

modeled after the ADA, but Title III of the ADA does not provide a right to a jury trial. *See id.* Accordingly, the Court does not find a statutory right to a jury trial under the Unruh Act where there is none under the ADA.

Further, the Seventh Amendment does not entitle the Parties to a jury trial because the $4,000 civil penalty under the Unruh Act is equitable in nature. *See Tull v. United States*, 481 U.S. 412, 417 (1987); *see also Traxler v. Multnomah Cnty.*, 596 F.3d 1007, 1012 ("[A]n award of monetary damages may constitute equitable relief if it is incidental to or intertwined with injunctive relief."). Although the Unruh Act provides for a civil penalty, this monetary relief is only available where there has been a violation of the ADA and is therefore merely incidental to the ADA's injunctive relief. *See Moeller v. Taco Bell Corp.*, 220 F.R.D. 612–13 (N.D. Cal. 2004 (concluding that the requested statutory relief under the Unruh Act was incidental to the injunctive relief under the ADA).

The Parties are hereby **ORDERED TO SHOW CAUSE, by no later than April 22, 2024,** why the Court should not convert the trial in this action to a court trial. The Parties are also **ORDERED** to complete their mandatory ADR proceeding by no later than **July 5, 2024** and file a further joint status report re settlement by no later than **July 12, 2024**. This Order supersedes the ADR deadlines set forth in the Court's CMO and Order/Referral to ADR. [Doc. ## 23, 24.]

**IT IS SO ORDERED.**

000070

# EXHIBIT 6

1    Peter Kristofer Strojnik, SBN 242728
pstrojnik@strojniklaw.com
2    Law Offices of Peter Strojnik
Esplanade Center III, Suite 700
3    2415 East Camelback Road
Phoenix, Arizona 85016
4    Telephone:  (415) 450-0100

5    Attorneys for Plaintiff THERESA BROOKE

6

7

8               **UNITED STATES DISTRICT COURT**

               **CENTRAL DISTRICT OF CALIFORNIA**
9

10   THERESA BROOKE, a married woman
dealing with her sole and separate claim,   Case No: 2:23-cv-07378-DMG
11

12            Plaintiff,   **PLAINTIFF'S RESPONSE TO
DOC. 38 ORDER TO SHOW
CASE**
13

14   vs.

15   TSAY JBR LLC, a California limited
liability company,
16

17           Defendant.

18
       Plaintiff does not object to a court trial of the remaining triable issue. Plaintiff
19
acknowledges receipt of the Court's deadline for ADR.
20

21
       RESPECTFULLY SUBMITTED this 15th day of April, 2024.
22

23                   **LAW OFFICES OF PETER STROJNIK**

24                   By /s/ Peter Kristofer Strojnik
25                     Peter K. Strojnik (242728)
                     Attorneys for Plaintiff
26

27

28

000072

# EXHIBIT 7

James S. Link (SBN 94280)
Counselor & Advocate at Law
215 N. Marengo, 3rd Floor
Pasadena, CA 91101
(626) 793-9570
james.s.link@att.net
Attorney for Defendant Tsay JBR LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THERESA BROOKE, a married woman dealing with her sole and separate claim, | Case No.: 2:23-cv-07378-DMG (AJRx) |
| Plaintiff, | **Response To Order To Show Cause Why The Jury Trial In This Case Should Not Be Converted To A Court Trial** |
| vs. | |
| TSAY JBR LLC, a California Limited Liability Company, | |
| Defendant. | |

## Introduction

The Seventh Amendment requires trial by jury, where demanded, on Plaintiff's legal claim for damages against Defendant Tsay JBR, Inc. brought pursuant to the Unruh Civil Rights Act. Jury trial cannot be denied on the basis that Unruh is modeled after the Americans With Disabilities Act. Unruh preceded the ADA by many years. Trial by jury cannot be denied because claims under the ADA are in equity. The Supreme Court cases establish that jury trial must be preserved in mixed cases of legal causes of action and equitable causes of action. Unruh presents a legal claim for damages for which a jury trial is guaranteed. Tsay JBR demanded and continues to demand a trial by jury.

1      **1.      Unruh long pre-existed the Americans with Disabilities Act; Unruh**

2  **is not modeled after the ADA.**

3          As stated by the Supreme Court in *Warfield v. Peninsula Golf & Country*

4  *Club*, 10 Cal.4th 594, 607-608(1995),

5          "The origins and background of [Civil Code] section 51 [of Unruh] have been

6          discussed at some length in a number of our prior decisions [citations], and,

7          for present purposes, we believe it is sufficient briefly to summarize that

8          history.  [¶]  The general policy embodied in section 51 can be traced to the

9          early common law doctrine that required a few, particularly vital, public

10         enterprises--such as privately owned toll bridges, ferryboats, and inns--to

11         serve all members of the public without arbitrary discrimination. [Citations.]

12         After the United States Supreme Court, in the *Civil Rights Cases* (1883) 109

13         U.S. 3 [27 L. Ed. 835, 3 S.Ct. 18], invalidated the first federal public

14         accommodation statute, **California joined a number of other states in**

15         **enacting its own initial public accommodation statute, the statutory**

16         **predecessor of the current version of section 51. (Stats. 1897, ch. 108, § 2,**

17         **p. 137.)**"  (Emphasis added.)

18         Unruh traces back to 1897.  Civil Code § 51 came into being in 1905.  In

19  1987, still many years prior to the enactment of the ADA, the Unruh Civil Rights Act

20  protections were specifically extended to the disabled.  See the Stats. 1987, Chap.

21  159 (enrolled bill) where the Legislature stated:

22         "**Existing law provides similar, but less inclusive civil rights, provisions**

23         with respect to blind and other physically, disabled persons. [¶] This bill

24         would include blindness and other physical disabilities within the bases of

25         discrimination prohibited by these general civil rights [Unruh] provisions."

26         (Emphasis added.)  See Exhibit 1.

27         The "similar, but less inclusive, civil rights, provisions" are found in the

28  Disabled Persons Act, Civil Code §§ 54, et seq.  In 1968, decades before the ADA,

Case: 24-5234  08/26/2024  DktEntry: 1.1  Page 75 of 91
Case 2:23-cv-07378-DMG-AJR  Document 40  Filed 04/17/24  Page 3 of 18  Page ID #:547

**000075**

1  the Legislature enacted the DPA. Stats 1968, Chap 461. Civil Code § 54.1 of the

2  DPA provided at that time:

3      "**Blind persons, visually handicapped persons and other physically**

4      **disabled persons shall be entitled to full and equal access, as other**

5      **members of the general public, to accommodations**, advantages, facilities,

6      and privileges of all common carriers, airplanes, motor vehicles. railroad

7      trains, motorbuses. streetcars, boats or any other public conveyances or modes

8      of transportation, hotels, lodging places, places of public accommodation,

9      amusement or resort and other places to which the general public is invited,

10      subject only to the conditions and limitations established by law or state or

11      federal regulation, and applicable alike to all persons." See Exhibit 2.

12      Unruh and the DPA provided protections against discrimination years before

13  the enactment of the ADA.  Further, Title 24 of the California Code of Regulations,

14  Regulations for the Accommodation of the Disabled in Public Accommodation was

15  adopted 1984, preceding the adoption of the Americans with Disabilities Act Access

16  Guidelines in 1991.  See Exhibit 3.

17      Unruh was not modeled after the ADA.  In the uncodified Section 1 of 1992

18  Stats. Chap. 913, the intent of the Legislature is stated for the incorporation:

19      "It is the intent of the Legislature in enacting this act **to strengthen California**

20      **law** in areas where it is weaker than the Americans with Disabilities Act of

21      1990 (Public Law 101-336) **and to retain California law when it provides**

22      **more protection for individuals with disabilities than the Americans with**

23      **Disabilities Act of 1990**."  (Emphasis added.)  See Exhibit 4.

24      The 1992 amendment strengthened Unruh; it did not reshape Unruh in the

25  form of the ADA. As stated by the Supreme Court,

26      "As part of the 1992 reformation of state disability law, the Legislature

27      amended the Unruh Civil Rights Act to incorporate by reference the ADA,

28      making violations of the ADA per se violations of the Unruh Civil Rights Act.

1   [Citations.]  **This amendment was intended to extend to disabled**

2   **individuals aggrieved by an ADA violation the full panoply of Unruh Civil**

3   **Rights Act remedies.** [Citation.]"  *Jankey v. Lee*, 55 Cal. 4th 1038, 1044

4   (2012).

5   Moreover, Unruh did not incorporate the federal procedure of the ADA.

6   Section 51 provides:  "(f) A violation of the right of any individual under the federal

7   Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a

8   violation of this section."  See also the parallel provision in (d) Civil Code § 54.1 of

9   the DPA.  The ADA is incorporated in Unruh and the DPA as a basis for a violation

10  of those Acts only.  The Supreme Court held in *Jankey v. Le*e, "We conclude the

11  plain language of section 55 makes an award of fees to any prevailing party

12  mandatory, and the ADA does not preempt this part of the state's attorney fee scheme

13  for disability access suits."  (55 Cal.4th at 1042.)  The procedural aspects of the

14  ADA are not incorporated into Unruh.

15  Unruh stands on its own; it is not a creation of federal law. *Lutz v. Glendale*

16  *Union High Sch., Dist. No. 205*, 403 F.3d 1061, 1069-70 (9th Cir. 2005), where the

17  Court in denying the right to trial by jury said the Arizona law in issue there was

18  "modeled after and generally identical to [Title VII]", simply does not apply to deny

19  the constitutional jury trial right in Unruh cases.

20  Nothing in or about the ADA justifies a denial of Tsay JBR's right to a jury

21  trial.  Section 52(a) of Unruh gives the parties the right to a jury trial or bench trial.

22  Defendant has demanded and continues to demand this action be tried by a jury.

23

24  **2.      The Seventh Amendment guarantees defendant's right to trial by**

25  **jury for this case.**

26  The Seventh Amendment provides, "In Suits at common law, where the value

27  in controversy shall exceed twenty dollars, the right of trial by jury shall be

28  preserved . . . ."

1    "[T]he right to a jury trial in the federal courts is to be determined as a matter

2    of federal law in diversity as well as other actions. **The federal policy**

3    **favoring jury trials is of historic and continuing strength**. [Citations.]

4    Only through a holding that the jury-trial right is to be determined according

5    to federal law can the uniformity in its exercise which is demanded by the

6    Seventh Amendment be achieved. In diversity cases, of course, **the**

7    **substantive dimension of the claim asserted finds its source in state law**,

8    [citations], but **the characterization of that state-created claim as legal or**

9    **equitable for purposes of whether a right to jury trial is indicated must be**

10   **made by recourse to federal law**." *Simler v. Conner*, 372 U.S. 221, 222, 83

11   S. Ct. 609, 610-11 (1963). Emphasis added.

12   The substantive dimension of the Unruh damage claim has a number of

13   common law tort factors that are partially expressed in CACI 3067, Unruh Civil

14   Rights Act—Damages (Civ. Code, §§ 51, 52(a))

15   "If you decide that [name of plaintiff] has proved [his/her/nonbinary

16   pronoun] claim against [name of defendant], **you also must decide how much**

17   **money will reasonably compensate** [him/her/nonbinary pronoun] for the

18   harm. This compensation is called 'damages.'

19   "**[Name of plaintiff] must prove the amount of [his/her/nonbinary**

20   **pronoun] damages**. However, [name of plaintiff] does not have to prove the

21   exact amount of the harm or the exact amount of damages that will provide

22   reasonable compensation for the harm. You must not speculate or guess

23   in awarding damages. The following are the specific items of damages

24   claimed by [name of plaintiff]:

25   "[Insert item(s) of claimed harm.]

26   "**In addition, you may award [name of plaintiff] up to three times**

27   **the amount of [his/her/nonbinary pronoun] actual damages as a penalty**

28   against [name of defendant]."  (Emphasis added.)

Case: 24-5234, 08/26/2024, DktEntry: 11, Page 78 of 91
Case 2:23-cv-07378-DMG-AJR   Document 40   Filed 04/17/24   Page 6 of 18   Page ID #:550

**000078**

1     The CACI instruction states part[1] of the factual showing to prove Unruh

2   damages, that is, actual damages and the amount thereof. But, the Judicial Council in

3   creating the CACI instruction has never considered the State law on penalties.

4     In *Munson v. Del Taco, Inc.*, 46 Cal.4th 661 (2009), the Supreme Court held

5   that proof of intentional wrongdoing is not required for an Unruh violation based on

6   a violation of the ADA.  However, the Supreme Court also stated:  "In any event,

7   intent to comply with or violate the law might be relevant on a number of other

8   issues, **including the award of treble damages** (§ 52, subd. (a)) … ." (46 Cal.4th at

9   678, fn.13, emphasis added.)

10     In *Harris v. Capital Growth Inv'rs XIV*, 52 Cal.3d 1142, 1172 (1951) the

11   Supreme Court said, "the damages provision [of section 52] allowing for an

12   **exemplary award of up to treble the actual damage**s suffered with a stated

13   minimum amount reveals a desire to punish intentional and morally offensive

14   conduct. [Emphasis added.]"

15     *Munson* and *Harris* have stated that treble damages require proof of

16   intentional wrongdoing and indeed morally offensive conduct.  That is what the state

17   law generally requires.  In *Crofoot Lumber, Inc. v. Ford*, 191 Cal.App.2d 238 (1961),

18   the statute in issue allowed treble damages but did not state the required proof.  The

19   court held: "The above cases clearly lay down the rule, without conflict, that treble

20   damages may only be awarded when the wrongdoer intentionally acted wilfully or

21   maliciously.  The intent required is the intent to vex, harass, or annoy or injure the

22   plaintiff." (Id. at 246.)  See also, *Buck v. Morrossis*, 114 Cal.App.2d 461, 466

23   (1952); *Sasson v. Katash*, 146 Cal.App.3d 119, 126 (1983).  The *Buck* court ruled

24     "the trial court in an unlawful detainer action may award, in a proper case,

25     treble damages, but the **statutes do not define the circumstances** under

26

27   _____

[1] In addition, the court of appeal *Thurston v. Omni Hotels Mgmt. Corp.*, 69 Cal. App.

28   5th 299, 304, 309 (2021) approved the jury instruction requiring plaintiff to prove
her bona fide intent to the customer.

1   which such an award can be made, **but the cases have held that such award**

2   **is only permissible when the evidence shows that the holding over is**

3   **deliberate, intentional and obstinate**. [Citations.] [Emphasis added.]"  (114

4   Cal.App.2d at 466.)

5       Thus, in addition to the elements for Unruh damage in CAC1 3067, the jury

6   may only award the statutory minimum penalty on a finding of malice.

7       The Judicial Council also has never fully considered the language of section

8   52 that states the award of the statutory minimum penalty can only be awarded by

9   the jury if there are actual damages.[2]

10      Section 52 provides in pertinent part: "(a) Whoever denies, aids or incites a

11  denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or

12  51.6, *is liable* for each and every offense *for the actual damages*, **and** *any amount*

13  *that may be determined* by a jury, or a court sitting without a jury, *up to a maximum*

14  *of three times the amount of actual damage* **but in no case less than** *four thousand*

15  *dollars* ($4,000), … . [Italics added.]"

16      Any suggestion the statutory minimum penalty can be awarded without proof

17  of actual damages ignores the plain words of section 52 that prescribe the awardable

18  damage recovery.  First, a plaintiff may recover "actual damages".  Second, and in

19  addition to the first, a plaintiff may receive an enhancement of up to three times

20  "actual damage" "**but in no case less than**" $4,000.  By the plain reading of the

21  code, the permissible treble damages must be no less than the stated minimum of

22  $4,000.00, i.e., the statutory minimum damages.  The statutory minimum damages

23

24  ---

    [2] The Directions for Use for CACI 3067 wrongly rely *Koire v. Metro Car Wash*

25  (1985) 40 Cal.3d 24 regarding the minimum statutory penalty for the award of the
    statutory minimum penalty.  In *Koire*, plaintiffs suffered actual damages. Id. at 34.

26  To the extent the Court in dicta suggested the statutory minimum damages could be
    awarded without proof of actual damages, the Legislature dispelled such dicta in the

27  enactment of Civil Code § 55.56 that specifies a plaintiff must prove actual damage

28  or harm.

1   require proof of "actual damages".  Obviously, there must be actual damages to

2   treble and to award but in no case less than $4,000.

3        The United States Supreme Court in *Doe v. Chao* (2004) 540 U.S. 614 came

4   to the same conclusion upon analysis of statutory language similar to section 52.  In

5   *Doe*, the privacy statute in issue permitted recovery for "*actual damages* sustained

6   by the individual as a result of the refusal or failure [to protect privacy], *but in no*

7   *case shall a person entitled to recovery receive less* than the sum of $1,000" [italics

8   added].  5 USCS § 552a(g)(4)(a).  The Supreme Court ruled that "by a

9   straightforward textual analysis" the government correctly noted, "*the minimum*

10  *guarantee goes only to victims who prove some actual damages*".  (540 U.S. at 620,

11  italics added.)

12       Also, the Supreme Court noted that statutory minimum damages without proof

13  of some actual damages "is at odds with the traditional understanding that tort

14  recovery requires not only wrongful act plus causation reaching to the plaintiff, but

15  proof of some harm for which damages can reasonably be assessed. [Citation.]" *Doe,*

16  *supra,* 540 U.S. at 621.)

17       Actual damages are not presumed for an alleged Unruh violation.  In 1991, the

18  Legislature added, section 52(h):  "For the purposes of this section, 'actual damages'

19  means special and general damages. This subdivision is declaratory of existing law."

20  If damages were presumed, there would be no need for section 52(h) to define actual

21  damages as special or general damages.

22       Tsay JBR is constitutionally entitled to  a jury trial on plaintiff's damage

23  claim.  As the Supreme Court said, "Whatever doubt may have existed should now

24  be dispelled. The Seventh Amendment does apply to actions enforcing statutory

25  rights, and requires a jury trial upon demand, **if the statute creates legal rights and**

26  **remedies, enforceable *in an action for damages* in the ordinary courts of law**."

27  *Curtis v. Loether*, 415 U.S. 189, 193-94, 94 S. Ct. 1005, 1008 (1974). Emphasis

28  added.

Case: 24-5234, 08/26/2024, DktEntry: 1.1, Page 81 of 91
Case 2:23-cv-07378-DMG-AJR   Document 40   Filed 04/17/24   Page 9 of 18   Page ID #:553

**000081**

1   Unruh damages are enforceable in ordinary courts of law.  They are often

2   pursued in the limited jurisdiction courts that do not have the equitable power of

3   injunctive relief.  *Ytuarte v. Superior Court*, 129 Cal. App. 4th 266, 275 (2005) ["a

4   plaintiff in a limited civil action may not obtain a permanent injunction"].  Unruh

5   damage claims are not tied to claims for injunctive relief.

6   Further, the constitution commands the right to trial by jury even though the

7   action is mixed law and equity—which this case is no longer with the ruling on the

8   motion for summary judgment.  In  any event, the rule stated by the Supreme Court

9   is:

10   "In such a situation, if a 'legal claim is joined with an equitable claim, **the**

11   **right to jury trial on the legal claim, including all issues common to both**

12   **claims, remains intact. The right cannot be abridged by characterizing**

13   **the legal claim as "incidental" to the equitable relief sought.**' *Curtis* v.

14   *Loether*, 415 U.S., at 196, n. 11. Thus, petitioner has a constitutional right to a

15   jury trial to determine his liability on the legal claims." *Tull v. United States*,

16   481 U.S. 412, 425, 107 S. Ct. 1831, 1839 (1987).  Emphasis added.[3]

17   The Court in *Tull* also stated, "while a court in equity may award monetary

18   restitution as an adjunct to injunctive relief, **it may not enforce civil penalties**.

19   [Citation.]" *Tull,* 481 U.S. at 424, emphasis added.  The statutory minimum penalty

20   of $4000 is a penalty that equity cannot award.  Unruh damages present a legal

21   claim; they cannot be considered incidental to the injunctive relief awarded by the

22   Court.

23   ## Conclusion

24   Unruh, and its damage remedy, is not modeled after the ADA and is not

25   controlled in anyway by the ADA.  The very existence of the CACI instructions for

26

27   ---
[3] The Court's reliance on *Traxler v. Multnomah Cty.*, 596 F.3d 1007, 1013 (9th Cir.

28   2010) is misplaced.  That case involved back pay which is considered restitution, an
equitable remedy.

1  the Unruh Damage claims and cases like *Thurston, supra*, show the Unruh damages

2  stand distinct from the ADA and require trial by jury where demanded.

3      Frankly, Unruh is the driving force behind this genre of litigation.  Without

4  damages, there would be much less litigation.  Plaintiffs must be put to the task of

5  proving her damages to jury of her peers.  The Seventh Amendment guarantees Tsay

6  JBR a jury trial in this case.

7      The legal issues surrounding Unruh damages must be resolved by California

8  law and damages determined by a jury.

9

10  Date: April 17, 2024                         James S. Link
                                                Counselor & Advocate at Law
11
12                                              _____
                                                James S. Link
13                                              Counsel for Defendant Tsay JBR LLC
14
15                        **Word Count Certificate**

16      The undersigned, counsel of record for defendant Tsay JBR, LLC certifies that

17  this brief contains 2953 words, which complies with the word limit of L.R. 11-6.1.

18  Date: April 17, 2024                         _____
19                                              James S. Link
20                                              Attorneys for Defendant Tsay JBR, LLC
21
22
23
24
25
26
27
28

000083

## Assembly Bill No. 181

### CHAPTER 159

An act to amend Sections 51, 51.5, 51.8, 52, and 53 of the Civil Code, relating to civil rights.

[Approved by Governor July 14, 1987. Filed with
Secretary of State July 14, 1987.]

LEGISLATIVE COUNSEL'S DIGEST

AB 181, Harris.  Civil rights: bases of discrimination: physical disability.

Existing law relating to civil rights provides, generally, that (1) all persons no matter what their sex, race, color, religion, ancestry, or national origin are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever; (2) no business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, refuse to buy from, sell to, or trade with any person in this state because of the race, creed, religion, color, national origin, or sex of that person; (3) no franchisor shall discriminate in the granting of franchises solely because of the racial, ethnic, religious, or national origin composition of a neighborhood or geographic area in which the franchise is located; and (4) every restriction or prohibition relating to the acquisition, use, or occupation of real property which is based on sex, race, color, religion, ancestry, or national origin is void. Existing law provides similar, but less inclusive, civil rights provisions with respect to blind and other physically disabled persons.

This bill would include blindness or other physical disability within the bases of discrimination prohibited by these general civil rights provisions. This bill would also provide that it shall not be construed to require any construction, alteration, repair, or modification to any existing establishment, facility, building, improvement, or any other structure, or to augment, alter, or restrict the authority of the State Architect, as specified.

*The people of the State of California do enact as follows:*

SECTION 1.  Section 51 of the Civil Code is amended to read:
51.  This section shall be known, and may be cited, as the Unruh Civil Rights Act.

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, or blindness or other physical disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

## Exhibit 1



LEGISLATIVE INTENT SERVICE       (800) 666-1917

Case: 24-5234 08/26/2024 DktEntry: 1.1 Page 84 of 91
Case 2:23-cv-07378-DMG-AJR Document 40 Filed 04/17/24 Page 12 of 18 Page ID #:556

Ch. 159 — 2 —

000084 159

This section shall not be construed to confer any right or privilege on a person which is conditioned or limited by law or which is applicable alike to persons of every sex, color, race, religion, ancestry, national origin, or blindness or other physical disability.

Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever to any new or existing establishment, facility, building, improvement, or any other structure, or to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other provisions of the law.

Nothing in this section shall require any person renting, leasing, or otherwise providing real property for compensation to modify his or her property in any way, or to provide a higher degree of care for a blind or other physically disabled person than for a person who is not physically disabled.

SEC. 2. Section 51.5 of the Civil Code is amended to read:

51.5. No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, refuse to buy from, sell to, or trade with any person in this state because of the race, creed, religion, color, national origin, sex, or blindness or other physical disability of the person or of the person's partners, members, stockholders, directors, officers, managers, superintendents, agents, employees, business associates, suppliers, or customers.

As used in this section "person" includes any person, firm, association, organization, partnership, business trust, corporation, or company.

Nothing in this section shall be construed to require any construction, alternation, repair, structural or otherwise, or modification of any sort whatsoever to any new or existing establishment, facility, building, improvement, or any other structure, or to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other provisions of the law.

Nothing in this section shall require any person renting, leasing, or otherwise providing real property for compensation to modify his or her property in any way, or to provide a higher degree of care for a blind or other physically disabled person than for a person who is not physically disabled.

SEC. 3. Section 51.8 of the Civil Code is amended to read:

51.8. No franchisor shall discriminate in the granting of franchises solely because of the race, color, religion, sex, or national origin of the franchisee and the racial, ethnic, religious, national origin, or blindness or other physical disability composition of a neighborhood or geographic area in which the franchise is located. Nothing in this section shall be interpreted to prohibit a franchisor from granting a franchise to prospective franchisees as part of a program or programs to make franchises available to persons lacking the capital, training, business experience, or other qualifications ordinarily required of franchisees, or any other affirmative action program adopted by the franchisor.

Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever to any new or existing establishment, facility, building, improvement, or any other structure, or to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other provisions of the law.

Nothing in this section shall require any person renting, leasing, or otherwise providing real property for compensation to modify his or her property in any way, or to provide a higher degree of care for a blind or other physically disabled person than for a person who is not physically disabled.

SEC. 4. Section 52 of the Civil Code is amended to read:

52. (a) Whoever denies, or who aids, or incites toward denial, or whoever makes any discrimination, distinction or restriction on account of sex, color, race, religion, ancestry, national origin, or blindness or other physical disability contrary to the provisions of Section 51 or 51.5, is liable for each and every such offense for the actual damages, and such amount as may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than two hundred fifty dollars ($250), and such attorney's fees as may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51 or 51.5.

(b) Whoever denies the right provided by Section 51.7, or whoever aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, (1) an amount to be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damages; (2) a civil penalty of ten thousand dollars ($10,000); and (3) attorney fees as may be determined by the court. In the case of multiple offenders, the ten thousand dollar ($10,000) civil penalty shall be prorated between them.

(c) Whenever there is reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights hereby secured, and that the pattern or practice is of such a nature and is intended to deny the full exercise of the rights herein described, the Attorney General, any district attorney or city attorney, or any person aggrieved by the pattern or practice may bring a civil action in the appropriate court by filing with it a complaint (1) signed by the officer (or in his or her absence the individual acting on behalf of the officer) or by the

Case: 24-5234  08/26/2024  DktEntry: 1.1  Page 85 of 91
Case 2:23-cv-07378-DMG-AJR  Document 40  Filed 04/17/24  Page 13 of 18  Page ID #:557

Ch. 159        — 4 —                                                                    — 5 —        **000085**
                                                                                                    Ch. 159

person aggrieved, (2) setting forth facts pertaining to the pattern or practice, and (3) requesting such preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order against the person or persons responsible for such pattern or practice, as he or she deems necessary to insure the full enjoyment of the rights herein described.

(d) Whenever an action has been commenced in any court seeking relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution of the United States on account of race, color, religion, sex, national origin, or blindness or other physical disability, the Attorney General or any district attorney or city attorney for or in the name of the people of the State of California may intervene in the action upon timely application if the Attorney General or any district attorney or city attorney certifies that the case is of general public importance. In that action the people of the State of California shall be entitled to the same relief as if it had instituted the action.

(e) Actions under this section shall be independent of any other remedies or procedures that may be available to an aggrieved party.

(f) Any person claiming to be aggrieved by an alleged unlawful practice in violation of Section 51 or 51.7 may also file a verified complaint with the Department of Fair Employment and Housing pursuant to Section 12948 of the Government Code.

(g) Nothing in this section shall be construed to require any construction, alteration, repair, structural or otherwise, or modification of any sort whatsoever to any new or existing establishment, facility, building, improvement, or any other structure, or to augment, restrict, or alter in any way the authority of the State Architect to require construction, alteration, repair, or modifications that the State Architect otherwise possesses pursuant to other provisions of the law.

Nothing in this section shall require any person renting, leasing, or otherwise providing real property for compensation to modify his or her property in any way, or provide a higher degree of care for a blind or other physically disabled person than for a person who is not physically disabled.

SEC. 5.  Section 53 of the Civil Code is amended to read:

53.  (a) Every provision in a written instrument relating to real property which purports to forbid or restrict the conveyance, encumbrance, leasing, or mortgaging of that real property to any person of a specified sex, race, color, religion, ancestry, national origin, or blindness or other physical disability, is void and every restriction or prohibition as to the use or occupation of real property because of the user's or occupier's sex, race, color, religion, ancestry, national origin, or blindness or other physical disability is void.

(b) Every restriction or prohibition, whether by way of covenant, condition upon use or occupation, or upon transfer of title to or upon property, which restriction or prohibition directly or indirectly limits the acquisition, use or occupation of that property because of the acquirer's, user's, or occupier's sex, race, color, religion, ancestry, national origin, or blindness or other physical disability is void.

(c) In any action to declare that a restriction or prohibition specified in subdivision (a) or (b) is void, the court shall take judicial notice of the recorded instrument or instruments containing the prohibitions or restrictions in the same manner that it takes judicial notice of the matters listed in Section 452 of the Evidence Code.

Nothing in this section shall require any person renting, leasing, or otherwise providing real property for compensation to modify his or her property in any way, or provide a higher degree of care for a blind or other physically disabled person than for a person who is not physically disabled.

SEC. 6.  The Legislature does not intend by this act to impose building standards or construction requirements of any sort whatsoever or to augment, restrict, or alter in any way the authority that the State Architect otherwise possesses pursuant to other provisions of the law.

O

enacted at such session or, if enacted, does not amend Section 1193, and in such case at the same time as the amendments to Section 1193, as contained in Assembly Bill No. 997, become operative, in which event Sections 1, 2, 4, 5, and 7 of this act shall not be operative.

SEC. 7. Section 4 of this act shall become operative only if both Senate Bill No. 457 and Assembly Bill No. 997 are enacted by the Legislature at the 1968 Regular Session and if each such bill, as enacted, amends Section 1193 of the Code of Civil Procedure, and in such case at the same time as the amendments to Section 1193, as contained in Senate Bill No 457 and Assembly Bill No. 997, become operative, in which event Sections 1, 2, 3, 5, and 6 of this act shall not be operative.

———

# CHAPTER 461

*An act to add Part 2.5 (commencing with Section 54) to Division 1 of the Civil Code, to add Chapter 11 (commencing with Section 3550) to Division 4 of Title 1 of the Government Code, to repeal Sections 643, 643a, 643b and 643.5 of the Penal Code, and to add Sections 21963, 21964, and 21965 to the Vehicle Code, relating to blind and other physically disabled persons.*

[Approved by Governor July 3, 1968. Filed with
Secretary of State July 3, 1968 ]

*The people of the State of California do enact as follows:*

SECTION 1. Part 2.5 (commencing with Section 54) is added to Division 1 of the Civil Code, to read:

## PART 2.5. BLIND AND OTHER PHYSICALLY DISABLED PERSONS

54. Blind persons, visually handicapped persons, and other physically disabled persons shall have the same right as the able-bodied to the full and free use of the streets, highways, sidewalks, walkways, public buildings, public facilities, and other public places.

54.1. Blind persons, visually handicapped persons, and other physically disabled persons shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities, and privileges of all common carriers, airplanes, motor vehicles, railroad trains, motorbuses, streetcars, boats or any other public conveyances or modes of transportation, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited, subject only to the conditions and limitations established by law, or state or federal regulation, and applicable alike to all persons.

Exhibit 2

54.2. Every totally or partially blind person shall have the right to be accompanied by a guide dog, especially trained for the purpose, in any of the places specified in Section 54.1 without being required to pay an extra charge for the guide dog; provided that he shall be liable for any damage done to the premises or facilities by such dog.

54.3. Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of a totally or partially blind person or other disabled person under Sections 54, 54.1 and 54.2 shall be guilty of a misdemeanor.

54.4. A totally or partially blind pedestrian shall have all of the rights and privileges conferred by law upon other persons in any of the places, accommodations, or conveyances specified in Sections 54 and 54.1, notwithstanding the fact that such person is not carrying a predominantly white cane (with or without a red tip), or using a guide dog. The failure of a totally or partially blind person to carry such a cane or to use such a guide dog shall not constitute negligence per se.

54.5. Each year, the Governor shall publicly proclaim October 15 as White Cane Safety Day. He shall issue a proclamation in which:

(a) Comments shall be made upon the significance of this chapter.

(b) Citizens of the state are called upon to observe the provisions of this chapter and to take precautions necessary to the safety of disabled persons.

(c) Citizens of the state are reminded of the policies with respect to disabled persons declared in this chapter and he urges the citizens to cooperate in giving effect to them.

(d) Emphasis shall be made on the need of the citizenry to be aware of the presence of disabled persons in the community and to keep safe and functional for the disabled the streets, highways, sidewalks, walkways, public buildings, public facilities, other public places, places of public accommodation, amusement and resort, and other places to which the public is invited, and to offer assistance to disabled persons upon appropriate occasions.

(e) It is the policy of this state to encourage and enable blind persons, visually handicapped persons, and other physically disabled persons to participate fully in the social and economic life of the state and to engage in remunerative employment.

54.6. As used in this part, "blind," "totally blind," "visually handicapped," and "partially blind" mean having central visual acuity not to exceed 20/200 in the better eye, with corrected lenses, as measured by the Snellen test, or visual acuity greater than 20/200, but with a limitation in the field of vision such that the widest diameter of the visual field subtends an angle not greater than 20 degrees.

SEC. 2. Chapter 11 (commencing with Section 3550) is added to Division 4 of Title 1 of the Government Code, to read:

## CHAPTER 11. HIRING OF BLIND AND OTHER PHYSICALLY DISABLED PERSONS

3550. The Legislature hereby declares that:

(a) It is the policy of this state to encourage and enable blind persons, visually handicapped persons, and other physically disabled persons to participate fully in the social and economic life of the state and to engage in remunerative employment.

(b) It is the policy of this state that blind persons, visually handicapped persons, and other physically disabled persons shall be employed in the state service, the service of the political subdivisions of the state, in public schools, and in all other employment supported in whole or in part by public funds on the same terms and conditions as the able-bodied, unless it is shown that the particular disability prevents the performance of the work involved.

SEC. 3. Section 643 of the Penal Code is repealed.

SEC. 4. Section 643a of the Penal Code is repealed.

SEC. 5. Section 643b of the Penal Code is repealed.

SEC. 6. Section 643.5 of the Penal Code is repealed.

SEC. 7. Section 21963 is added to the Vehicle Code, to read:

21963. A totally or partially blind pedestrian who is carrying a predominantly white cane (with or without a red tip), or using a guide dog, shall have the right-of-way, and the driver of any vehicle approaching such pedestrian, who fails to yield such right-of-way, or to take all reasonably necessary precautions to avoid injury to such blind pedestrian, is guilty of a misdemeanor. This section shall not preclude prosecution under any other applicable provision of law.

SEC. 8. Section 21964 is added to the Vehicle Code, to read:

21964. No person, other than those totally or partially blind, shall carry or use on any highway or in any public building, public facility, or other public place, a predominantly white cane (with or without a red tip).

SEC. 9. Section 21965 is added to the Vehicle Code, to read:

21965. As used in Sections 21963 and 21964, "blind," "totally blind," and "partially blind," mean having central visual acuity not to exceed 20/200 in the better eye, with corrected lenses, as measured by the Snellen test, or visual acuity greater than 20/200, but with a limitation in the field of vision such that the widest diameter of the visual field subtends an angle not greater than 20 degrees.

Case: 24-5234  08/26/2024  DktEntry: 1.1  Page 89 of 91
Case 2:23-cv-07378-DMG-AJR  Document 40  Filed 04/17/24  Page 17 of 18  Page ID #:561

000089

# REGULATIONS
# FOR THE ACCOMMODATION
# OF THE DISABLED
IN PUBLIC ACCOMMODATIONS

**FROM THE STATE BUILDING CODE
TITLE 24, PARTS 2, 3 & 5**

PREPARED BY THE OFFICE OF THE STATE ARCHITECT
AND THE DEPARTMENT OF REHABILITATION



Office
of the
State
Architect

STATE ARCHITECT
WHITSON W. COX  FAIA

**AUGUST 16, 1984**

Exhibit 3

4282                    STATUTES OF 1992                    [ Ch. 913

12993 of the Government Code proposed by both this bill and AB 1077. It shall only become operative if (1) both bills are enacted and become effective January 1, 1993, (2) each bill amends Section 12993 of the Government Code, (3) AB 1178 is not enacted or as enacted does not amend that section, and (4) this bill is enacted after AB 1077, in which case Sections 8, 8.1, and 8.3 of this bill shall not become operative.

(c) Section 8.3 of this bill incorporates amendments to Section 12993 of the Government Code proposed by this bill, AB 1178, and AB 1077. It shall only become operative if (1) all three bills are enacted and become effective January 1, 1993, (2) all three bills amend Section 12993 of the Government Code, and (3) this bill is enacted after AB 1178 and AB 1077, in which case Sections 8, 8.1, and 8.2 of this bill shall not become operative.

————

CHAPTER 913

An act to amend Section 125.6 of the Business and Professions Code, to amend Sections 51, 51.5, 51.8, 52, 53, 54, 54.1, 54.2, 54.3, and 54.8 of the Civil Code, to amend Section 224 of the Code of Civil Procedure, to amend Sections 44100, 44101, 44337, and 44338 of the Education Code, to amend Sections 754 and 754.5 of the Evidence Code, to amend Sections 4450, 4500, 11135, 12920, 12921, 12926, 12931, 12940, 12944, 12993, 19230, 19231, 19232, 19233, 19234, 19235, 19237, and 19702 of, to add Section 12940.3 to, and to repeal Section 12994 of, the Government Code, to amend Section 19952 of the Health and Safety Code, to amend Section 1735 of the Labor Code, to amend Section 365.5 of the Penal Code, to amend Sections 2881 and 99155.5 of, and to add Section 2881.2 to, the Public Utilities Code, to amend Section 2557 of the Streets and Highways Code, and to amend Section 336 of the Vehicle Code, relating to disabled persons.

[Approved by Governor September 24, 1992  Filed with
Secretary of State September 25, 1992 ]

*The people of the State of California do enact as follows:*

SECTION 1.   It is the intent of the Legislature in enacting this act to strengthen California law in areas where it is weaker than the Americans with Disabilities Act of 1990 (Public Law 101-336) and to retain California law when it provides more protection for individuals with disabilities than the Americans with Disabilities Act of 1990.

SEC. 2.   Section 125.6 of the Business and Professions Code is amended to read:

125.6.   Every person who holds a license under the provisions of this code is subject to disciplinary action under the disciplinary provisions of this code applicable to such person if, because of the

**Exhibit 4**                                          138360

## CERTIFICATE OF SERVICE

Form 15. Certificate of Service for Electronic Filing

**9th Cir. Case Number(s)**

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT </u>Registered for Electronic Filing:** I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered

☐

case participants *(list each name and mailing/email address)*:

Clerk
United States District Court For The
Central District Of California
350 W 1st Street, Suite 4311
Los Angeles, CA 90012-4565

Hon. Dolly Gee
United States District Court Judge
350 W 1st Street, Courtroom 8C
Los Angeles, CA 90012

P. Kristofer Strojnik
Law Offices Of Peter Strojnik
2415 E Camelback Rd, Ste 700
Phoenix, Arizona 85016

**Description of Document(s)** *(required for all documents)*:

Petition For Writ Of Mandamus.

**Signature** /s/James S. Link          **Date** August 26, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*